*New-Haven,
July,
1822.*

Brush
*v.*
Curtis.

⸻⸺

MAGILL *against* PARSONS and others.

The act of Congress of the 10th of *April*, 1816, incorporating the bank of the *United States*, is a law made in pursuance of the constitution of the *United States*.

The particular provision in that act, which empowers the bank to sue in any circuit court of the *United States*, is also constitutional.

An action of *assumpsit*, brought by the bank of the *United States*, is a case arising under the laws of the *United States*.

This was an action of assault and battery, and false imprisonment.

The defendant, by a special plea of justification, alleged, that all the acts averred in the declaration, were done under a process of attachment, issued from, and returnable in, the circuit court of the *United States* for the district of *Connecticut*, in favour of the bank of the *United States*, against the plaintiff, in an action of *assumpsit*; and that three of the defendants were the agents of the bank, and, as such, procured the process; and that the other defendant acted as deputy-marshall, in pursuance of their authority, and in execution of the duties of his office. The plea concluded with the usual averments, that no unnecessary force was used; and that this was the same trespass as that alleged in the declaration. To this plea the plaintiff demurred; and the case was reserved for the advice of all the Judges.

*Middlesex,*
July,
1822.

Magill
*v.*
Parsons.

*Sherman* and *Stanley*, in support of the demurrer, contended, That the process set forth in the plea, was not a justification of the defendants, because the circuit court of the *United States* had not jurisdiction of the cause. In support of this general proposition, they contended,

1. That it did not appear that the circuit court had jurisdiction, from *the character of the parties* ; they not being citizens of different states. The plaintiffs in that suit, being a corporation aggregate, the corporation, as such, cannot be a citizen. If the individuals composing the corporation, are citizens of a different state from that of which the defendant is a citizen, and are so averred to be, such corporation may sue in the circuit court; but not otherwise. *The Hope Insurance Company of Providence* v. *Boardman* & al. 5 *Cranch* 57. *The Bank of the United States* v. *Deveaux* & al. 5 *Cranch* 61.

2. That there is nothing in *the nature of the case,* to give the circuit court jurisdiction; it being merely an action of *assumpsit* at common law.

3. That the authority given to the bank, by the 7th section of their charter, to sue and be sued, in all cases, in any circuit court of the *United States,* must be limited by the constitution; otherwise, the provisions of the constitution are nugatory ; and Congress may, by a declaratory law, bring every person, and every cause of action, within the jurisdiction of the circuit court. *Hodgson & al.* v. *Bowerbank & al.* 5 *Cranch* 303. *Owings* v. *Norwood's* lessee, 5 *Cranch* 344. Congress has no power to confer jurisdiction, except by virtue of the affirmative provisions of the constitution. *Cohens* v. *Virginia,* 6 *Wheat. Rep.* 400.

4. That the suit in question was not a *case arising under the laws of the United States* within the constitution. To constitute such a case, the party must ground his action or defence—or the right in controversy must appear from the pleadings to depend—on a law of the *United States.* But here the cause of action—the right sought to be enforced, by one party, and the liability of the other,—depend wholly on principles of the common law. An action brought by a bank, incorporated by the laws of this state, for money had and received, is an action at common law ; and not an action or case arising under the statute, which created the corporation. A case arises under a law, when a right given by that law, is violated. The fact that a corporation derives its existence, and its power to contract, from a law of Congress, does not

make every wrong of which that corporation may complain, a case arising under the law of Congress.

*Daggett*, contra, insisted, 1. That the circuit court had jurisdiction, by the express provision of the act of Congress incorporating the bank of the *United States*, approved *April* 10th, 1816. In the 7th section of that act, the bank is declared to possess the power " to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and *in any circuit court of the United States*." If the circuit court had not jurisdiction, it must be, either because the law establishing the bank is unconstitutional; or because the provision giving the bank power to sue in the circuit court, is so. He then contended,

1. That the act of Congress incorporating the bank of the *United States*, was constitutional. First, the three branches of the government so decided, after the most powerful opposition from the ablest men in the nation, in 1791. Secondly, it was so decided, in 1816, by the same constitutional authority, after all the interesting and enlightened discussions of the question, for twenty-five years. Thirdly, it has been so decided, *sub silentio*, by the courts of the *United States*, and of the several states, in sustaining civil suits, and awarding damages; in sustaining criminal prosecutions, and punishing forgeries of its paper. Fourthly, it was solemnly decided, by the supreme court of the *United States*, in 1819, in the case of *McCulloch* v. *The State of Maryland*, 4 *Wheat.* 316. The question, therefore, is no longer open.

2. That the provision giving the bank power to sue in the circuit court, was constitutional. First, it is a political axiom, as unquestioned as any one in the science of government, that the judicial power of any government should be co-extensive with its legislative power; because it is an attribute of sovereignty; because it is essential to accomplish the ends of government; and because it is essential to its preservation. 2 *Fed.* 224. *Cohens* v. *Virginia*, 6 *Wheat.* 264. 384. Hence, we might *expect* in the constitution of the *United States*, that the judicial power would be declared co-extensive with the legislative; and in determining the limits of the judicial power, we take this principle into consideration. 6 *Wheat.* 384. Secondly, the judicial power given to Congress, did in

*Middlesex,*
*July,*
*1822.*

*Magill*
*v.*
*Parsons.*

fact, as we might expect that it would, authorize this provision. The words of the constitution are " The judicial power of the *United States* shall extend to all cases in law and equity, arising under the constitution, the laws of the *United States*," &c. Now, is not a suit in favour of, or against, a bank of the *United States*, created by a law of the *United States*, a case arising under a law of the *United States ?* It is a *case*, certainly ; and a case, which, without this law, could never have arisen : it was created by it, and could exist by no other authority. It is, therefore, within the words and spirit of the constitution.

Lastly, that this question had been decided, in cases much stronger against the jurisdiction than this, in favour of the jurisdiction of the circuit c ourt. *The Bank of the United States* v. *Roberts, cor.* circuit court of the *United States* for the district of *Kentucky.* (*a*) *The Bank of the United States* v. *The Northumberland Union and Columbia Bank, cor.* circuit court of the *United States* for the eastern district of *Pennsylvania.*(*b*)

It is objected, that under the first act incorporating a bank, it was decided, by the supreme court of the *United States*, that the bank could not sue in the circuit court of the *United States.* This is true. *The Bank of the United States* v. *Deveaux* & al. 5 *Cranch* 61. The reason was, that no power was given, by the act, to sue in any particular court ; and the circuit court, not having any power except what is given to it, by Congress, could not hold jurisdiction. See Ch. J. *Marshall's* opinion, *p.* 85, 6. of the same case. It has been repeatedly, and uniformly, decided, that the courts of the *United States* have no common law jurisdiction ; that they cannot hold jurisdiction of any cases, to which the judicial power of the *United States* extends, except given to them, by the constitution or laws of the *United States.* *The United States* v. *Hudson and Goodwin,* 7 *Cranch* 32. On that ground rested the decision in *The Bank of the United States* v. *Deveaux* & al.

It is again said, that the judiciary act of 1789, confined the jurisdiction of the circuit court to suits between citizens of different states ; but in this case, all the parties are citizens of the same state. This is true ; and if, by the charter of the bank, the jurisdiction of the circuit court had been limited to

(*a*) A note of this case, from an authentic source, is subjoined to the case in the text.

(*b*) See an accurate note of this case subjoined.

suits between citizens of different states, it could not hold jurisdiction in this case : but it is not so ; there is no limitation. The true idea is, that where the controversy is between citizens of different states, the *parties* are every thing ; where it is a case arising under a law of the *United States, the character of the case* is every thing.   *Cohens* v. *Virginia*, 6 *Wheat.* 378. 392.

PETERS, J. In trespass for an assault, battery and false imprisonment, the defendants justify under a *capias ad respondendum* against the plaintiff, at the suit of the bank of the *United States*, in an action of *assumpsit*, returnable in the circuit court of the *United States* for the district of *Connecticut*.    If that court had jurisdiction, the plea is sufficient.    The act of Congress incorporating the bank, (a) expressly provides, that it may sue and be sued, in any circuit court of the *United States*.    This is conclusive, unless the act, or this particular provision, is unconstitutional.

The constitutionality of the act, is not now to be questioned.    The supreme court of the *United States, whose decision is final*, have decided it.    " After the most deliberate consideration," say that enlightened tribunal, in *McCulloch* v. *Maryland*, 4 *Wheat.* 316. 424.  " it is the unanimous and decided opinion of this court, that the act to incorporate the bank of the *United States*, is a law made in pursuance of the constitution, and is a part of the supreme law of the land."    As every judicial tribunal in the nation *must* bow to the supremacy of the court of dernier resort, in all cases arising under the constitution, laws and treaties of the Union, it becomes not me to attempt to illustrate or enforce their reasoning.    It is enough that they have so decided.

But as the attention of the supreme court was drawn to the general question, whether it was competent for the national legislature to incorporate a bank, and not to this particular provision, it may not be improper to enquire into its constitutionality.    If the act is constitutional, it is difficult to conceive how a part can be otherwise ; and it is still more difficult to conceive how Congress can have power to create a bank, and not have power to protect and preserve it.    Could this have been done, by a grant of "power to sue and be sued in all state courts having competent jurisdiction ?"    Let the

(a) Sect. 7. Approved, *April* 10th, 1816.

late proceedings in *Maryland* and *Ohio*, relative to this bank, answer the question. It is admitted, that without this provision, the bank could not have sued, nor been sued, in any circuit court; as no other statute has given this power; and the federal courts have no common law jurisdiction. *The Bank of the United States* v. *Deveaux* & al. 5 *Cranch* 61. Though the judicial power created by the constitution, extends to all cases arising under the constitution, laws and treaties of the Union; it cannot act, until set in motion, by the legislative power. *The United States* v. *Hudson & Goodwin*, 7 *Cranch* 32. 34.

It is not claimed, that the character of the parties gave the circuit court jurisdiction; as the bank is not an alien, nor a citizen of any state; and the plaintiff is not described as an alien, or a citizen of any other state. Is this, then, a case, arising under the constitution or laws of the Union? The bank, and all its powers, and all its rights, are created, by an act of Congress. But, say the plaintiff's counsel, this is not a *case*. It is true, that a case consists of a right and a wrong. The law creates not the wrong; but it does create the right, and prescribes the remedy. Suit, action and case are synonymous terms. " A suit is a lawful demand of one's right;" (*b*) or, as *Bracton* (*c*) more properly defines it, " *Actio nihil aliud est quam jus prosequendi in judicio, quod alicui debetur.*" Whence does the bank derive its *jus prosequendi*? From its charter, the source of its existence, and all its rights and powers. It is admitted, by the plaintiff's counsel, that a patentee of an invention may sue in the circuit court for an invasion of his right; because an act of Congress has given him this privilege. But the act no more creates the case, than it does the invention, or the invasion of it; though it does create his legal rights, and his case arises under the laws of the Union.

I am, therefore, clearly of opinion, that the act of Congress incorporating the bank of the *United States*, is a law made in pursuance of the constitution; and advise, that judgment be rendered for the defendants. In coming to this conclusion, I have been relieved from an anxious responsibility, by the luminous and cogent reasons of Chief Justice *Marshall*, in *McCulloch* v. *Maryland*, upon the general question of the constitutionality of the charter; and equally relieved and as-

(*b*) 3 *Bla. Comm.* 116.    (*c*) *Lib.* 3. *cap.* 1. *p.* 407.

sisted, by the able and learned opinions of Mr. Justice *Washington* and Judge *Peters*, in *The Bank of the United States v. The Northumberland, Union and Columbia Bank*, in the circuit court of the eastern district of *Pennsylvania*, and of Mr. Justice *Todd* and Judge *Trimble*, in *The Bank of the United States v. Roberts*, in the circuit court for the *Kentucky* district, upon the question of jurisdiction; in which I entirely, and respectfully, concur.

*Middlesex, July, 1822.*

Magill *v.* Parsons.

CHAPMAN, BRAINARD and BRISTOL, Js. were of the same opinion.

HOSMER, Ch. J., being nearly related to one of the defendants, gave no opinion.

Plea sufficient.

Circuit Court of the *United States* for the district of *Kentucky*.

THE PRESIDENT DIRECTORS AND COMPANY OF THE BANK OF THE UNITED STATES *against* THOMAS Q. ROBERTS and HENRY H. ROBERTS.

*Per Curiam.* The declaration in this case contains two counts. The first is on a bill of exchange drawn by the defendants, in *Kentucky*, upon *Thomas Townley* & Co. of *New-Orleans*, in favour of *William Bard*, or order, payable ten days after sight. The bill, by the procurement of the defendants, was indorsed by *William Bard*, to *Samuel T. Beal*, and by him indorsed, and the contents directed to be paid to the plaintiffs; and afterwards, at the instance of the defendants, was discounted and purchased by the plaintiffs, at their office of Discount and Deposit, established at *Lexington;* and which bill, after thus becoming the property of the plaintiffs, was presented, and protested for non-payment. The second count is in the usual form, for money had and received by the defendants, to the use of the plaintiffs.

The plaintiffs sue, in their corporate character, in the name and style conferred on them by the act of incorporation, and not by attorney ; and the declaration contains no averments as to the citizenship of the defendants, nor of the corporators, nor of any of the parties concerned in the transaction.

*Middlesex,*
*July,*
*1822.*

*Magill*
*v.*
*Parsons.*

The defendant, *Thomas Q. Roberts*, has demurred to the declaration, alleging "that the declaration and the counts therein contained are severally insufficient to authorize this court to take jurisdiction of the case, or render judgment thereon." The act of Congress incorporating the subscribers to the Bank of the *United States*, *Sec.* 7. provides, that the corporation, by the name and style of the " President Directors and Company of the Bank of the *United States*," shall be able and capable in law to sue and be sued, &c. without requiring them to sue by attorney. By the usages of this country, and the rules of practice in this court, it is not necessary, in any case, that a plaintiff should make out a warrant of attorney, authorizing an attorney to appear and prosecute for him. In the case of the *Kentucky Insurance Company* against *Hawkins*, 4 *Bibb*, 470., the court of appeals of this state, held, that the proceedings were sufficient to enable the plaintiffs to recover, although in that case, they sued in their corporate style and character, and not by attorney. We think there is no *weight* in the first cause of demurrer ; and will dismiss it without further observation.

The other causes of demurrer call in question the jurisdiction of this court. Without going into a minute examination of each particular cause assigned, in detail, we will proceed to consider the question of jurisdiction upon general principles, tested by the constitution and laws.

The constitution of the *United States* provides, *Article 3d.* and *Section 1st*, that " The judicial power of the *United States* shall be vested in one supreme court, and in such inferior courts as Congress may, from time to time, ordain and establish."

*Section second.* 1st. " The judicial power shall extend to all cases, in law and equity, arising under this constitution, the laws of the *United States*, and treaties made, or which shall be made, under their authority ; to all cases affecting ambassadors, or other public ministers and consuls ; to all cases of admiralty and maritime jurisdiction ; to controversies to which the *United States* shall be a party ; to controversies between two or more states ; between a state and citizens of another state ; between citizens of different states ; between citizens of the same state, claiming lands under grants of different states ; and between a state, or citizens thereof, and foreign states, citizens or subjects."

2d. " In all cases, affecting ambassadors, other public

ministers and consuls, and those in which a state shall be a
party, the supreme court shall have original jurisdiction. In
all other cases before mentioned, the supreme court shall have
appellate jurisdiction, both as to law and fact, with such ex-
ceptions, and under such regulations, as the Congress shall
make."

*Middlesex,*
*July,*
*1822.*

Magill
*v.*
Parsons.

The seventh section of the act of Congress incorporating
the subscribers to the Bank of the *United States*, enacts and
provides, that "the subscribers to the Bank of the *United
States* of *America*, their successors and assigns, shall be and
are hereby created, a corporation and body politic, by the
name and style of " *The President Directors and Company of
the Bank of the United States* ;" and, by that name, shall be, and
are hereby made, able and capable in law, (*inter alia*) to sue
and be sued, plead and be impleaded, answer and be answer-
ed, defend and be defended, *in all state courts having compe-
tent jurisdiction,* and in *any circuit court of the United States."*

Does this section of the act of Congress confer on this court
jurisdiction of the case before us? If it does not, it will read-
ily be admitted, that there is a failure of jurisdiction. This
case is not brought within any of the provisions of former acts
of Congress, declaring the jurisdictions of the circuit courts ;
nor does it belong to either class of cases, authorized by the
act, entitled " An act to establish the judicial courts of the
*United States*," to be brought in the circuit courts of the *Uni-
ted States.*

It must be admitted, too, that whatever may be the extent
of the judicial power of the *United States*, as declared by the
constitution, the *circuit court* can only exercise such por-
tions of that power, as are expressly conferred upon it by Con-
gress. This results, necessarily, from the nature of the pow-
er, and the provisions of the constitution. The judicial pow-
er of the *United States*, is, by the constitution, declared to ex-
tend to eleven enumerated classes. This may properly be
said to be the potential judicial power ; to be called into ac-
tion, either by some subsequent provisions of the constitution,
or by law, or by both. Hence we find, that the constitution
proceeds afterwards to declare, that this judicial power shall
be vested in one supreme court, created by the constitution,
and in such inferior courts as Congress shall from time to time
ordain and establish. The constitution defines the portions
of the judicial power vested in that supreme court, and leaves
the residue to be distributed among the inferior courts, which

*Middlesex,*
*July,*
*1822.*

*Magill*
*v.*
*Parsons.*

might be established by law ; and to be vested, or not vested, in them respectively, from time to time, according to the sound discretion of Congress. It follows, that a court, created by law, can only exercise the jurisdiction, which the law confers upon it. It cannot assume jurisdiction, under the constitution *alone*, without legal power being superadded.

It will be conceded further, that the circuit courts of the *United States*, will not, and cannot take cognizance, by implication. With these concessions, and under these circumstances, has the act of incorporation conferred upon this court jurisdiction ?

That the words of the law are not sufficiently explicit to give jurisdiction, will not bear an argument. The charter declares the bank may sue and be sued in any " state court having competent jurisdiction, or *in any circuit court of the United States.*" The right of appealing to the federal tribunals, is, by the charter, made reciprocal, between the bank and the people. If a citizen should appeal to this court for redress against the bank, we should turn him away with an ill grace indeed, by telling him, that although the law said he might sue here, it did not say we should entertain jurisdiction of the suit ; and that, therefore, we would give him no redress. The declaration of the law, that the party may sue in a designated court, must, *ex vi termini*, include the idea, that the court shall be competent to entertain the suit. The law must mean that, or nothing ; for it would be futile and ridiculous to send a party into court, for no other purpose but to be sent out again, for want of jurisdiction. We cannot hesitate to believe, that the letter of the charter is sufficiently explicit to give the circuit courts of the *United States* jurisdiction in all suits by or against the bank.

But it is contended for the defendant, that although by the *letter* of the statute, the court might have jurisdiction ; yet, according to its sound construction, it is otherwise. This has been argued several ways. It was said, that wherever a corporation is erected, the very creation of the corporation, by operation of law, gives it the capacity of suing and being sued ; and that therefore, as the words of the charter declaring the capacity of this corporation to sue and be sued, only express that which would have resulted by operation of law, without them, they ought to be disregarded in the construction of the statute. This doctrine might have been tenable, if the charter had confined itself to a simple declaration

of the corporation's legal capacity to sue and be sued, without designating in what courts that capacity should be exercised. In that case, it might safely be admitted, that the law expressed no more than would have been implied, without being expressed ; and good sense would seem to dictate, that, in such a case, the construction should be the same, with or without the words. We think the principle urged in argument, wholly inapplicable to the case before us. The statute does not, in its expressions, confine itself to what would otherwise have been implied. It not only declares the capacity of the corporation to sue, but expresses *in what courts :* " In any state court having competent jurisdiction, or any circuit court of the *United States*."

Surely, it will not be contended, that these expressions, or the idea conveyed by them, would have been supplied, by mere intendment and operation of law. If so, there would be an end of the argument. We cannot, on this ground, be authorized to reject the words of the statute.

It has been argued, that the act incorporating the bank, and the general act establishing the judicial courts of the *United States*, should be construed together as statutes made *in pari materia ;* that such construction should be given to the incorporating act as would make it consist with the judicial act ; and that consequently, the general expression of the act of incorporation, should be qualified and restrained, so as to permit the bank to sue in the circuit courts of the *United States*, in those cases *only*, in which it might have sued in those courts, by the provisions of the judicial act.

This argument will not bear examination. If, as was very properly urged in the argument for the plaintiffs, the two statutes are consistent in their provisions, they may very well stand together, without any violence to the expressions of either ; but if they are inconsistent, the incorporating act being the last expression of the legislative will, must prevail. The constitution of the *United States*, has divided the judicial power of the Union into eleven distinct classes. As already remarked, it vested a portion of that power in the supreme court, subject to limitations and regulations, to be imposed by Congress, and left the residue of that power to be disposed of according to the sound discretion of Congress. It is very clear, that the Congress did not, in the judicial act, dispose of the whole of that residue, or, in other words, did not vest

it in any court.   An example or two will serve to prove this position.   The judicial act makes no provision authorizing the patentee of a new discovery or invention to sue in the courts of the union, for an injury done to his patent rights. This manifestly pertained to the judicial power of the Union. The first act of Congress passed on the subject of those rights, did not authorize the patentees to sue in the circuit courts ; in consequence of which omission, they were compelled to resort to the tribunals of the states for redress : but, by a subsequent act of Congress, they were authorized to sue in the circuit courts, in terms very similar to those used in the charter of the bank.   Again, the judicial act did not authorize the assignee of a promissory note, or other chose in action, to sue in the courts of the *United States,* upon the ground of the plaintiff and defendant being citizens of different states, unless the assignor and the defendant were in the same attitude ; although the judicial power of the *United States* extends, by the constitution, expressly, to all controversies between citizens of different states, whatever may be the subject of controversy.   Congress might well, therefore, in any subsequent statute, as they have done in the charter of the bank, provide for a case not provided for in the judicial act,  and give jurisdiction beyond the provisions of that act within the limits of the judicial power of the Union.   This is a case of that sort ; a case before unprovided for.

It is a rule in the construction of statutes, equally dictated by the principles of law and good sense, that all the words of a statute, shall have some operation, if by possibility they may.   A decent respect for the legislature forbids us to believe, that when they speak, they mean differently from what they say, or mean nothing.

It is a rule of construction, that a subsequent statute shall controul a former ; but a former shall not controul a subsequent one.   This rule results from the very nature of legislation.   The last declaration of the public will must prevail.

But these rules would be violated, by adopting the construction contended for, on behalf of the defendant, so far as the judicial act and charter of the bank are inconsistent in their provisions.   It would require us to reject the expressions of the latter, to make it conform to the former ; to reject them, too, without necessity, when they are sensible and significant in themselves, and not repugnant to any other

expressions used in the statute. No court can be at liberty to indulge such a license in the construction of statutes.

It was further argued, that the court ought not to take jurisdiction by construction. This has been already admitted; but the words of the statute are explicit, as has been shown ; and it is only by construction, that this court can excuse itself from the exercise of jurisdiction : a construction too, not warranted by any known rules of interpretation.

The argument derived from the subect of costs, is entitled to no weight. Costs are the creatures of statutes. The act chartering the bank is silent on the subject ; there is, therefore, no repugnance between it and the judicial act ; and consequently, its provisions, in relation to costs, will govern in suits brought by the bank, as in other cases. Although the bank may, from the provisions of its charter, sue in this court, for any sum without limitation ; yet if it recovers less than five hundred dollars, it cannot recover costs ; and may be adjudged to pay the whole costs of suit, in the sound discretion of the court, as other suitors.

On the whole, we entertain no doubt of the jurisdiction of this court, if Congress possessed the constitutional power to confer it.

This leads to an enquiry of great importance to the bank, and to the good people of the *United States :* Is the provision in the charter, that the bank may " sue and be sued in any state court having competent jurisdiction, or in any circuit court of the *United States*," unconstitutional, and therefore void ?

It is admitted, that the power of Congress, to give jurisdiction to the circuit courts of the *United States*, in suits instituted by the bank, can be maintained only under the first number of the second clause of the third article of the constitution, declaring that the judicial power of the Union " shall extend to all cases in law and equity, arising under the constitution, the laws of the *United States*, and treaties made, or which shall be made, under their authority."

Is the case upon record one " arising under the laws of the *United States*" ? We have felt the novelty and difficulty of the question. It has demanded, and received, our most anxious and deliberate reflections ; and the result is, a conviction that we are bound to respond in the affirmative.

In the case of *McCulloch* v. *The State of Maryland*, in the supreme court of the *United States*, the court decided, that

*Middlesex,*
*July,*
*1822.*

*Magill*
*v.*
*Parsons.*

the act " to incorporate the subscribers to the bank of the *United States*" is a law made in pursuance of the constitution. That court being the supreme judicial tribunal of the nation, expressly vested, by the constitution, with power to decide, in the last resort, all questions of constitutional law, growing out of the laws of the *United States,* its decision is authoritative and conclusive, in all the courts of the *United States.* The learned counsel, therefore, very properly made no question as to the constitutional power of Congress to establish the bank.

If Congress had power to create the corporation, it would seem not to admit of a doubt, that Congress must have power to maintain its existence, to protect its powers, to enforce its rights, and to furnish the means of carrying on its operations. The bank was established as a necessary instrument to aid the government in its fiscal concerns. Could this national object be certainly effected, without conferring jurisdiction on the national tribunal? We think not. The state tribunals might safely be left to exercise concurrent, but not exclusive jurisdiction. Whether they would entertain jurisdiction or not, would depend on the courts themselves, and the jurisdiction conferred on them by the constitution and laws of the states. If the tribunals of the states should refuse, or if the laws of the states should forbid them, to entertain a suit instituted by the bank, where in the constitution of the *United States,* is the power to be found, authorising Congress to compel the state courts to exercise jurisdiction? We would hesitate to pronounce, that the national government possesses such a power. We do not mean to say, that the state courts, ought not, or cannot, entertain jurisdiction in suits between the bank and the citizens. We think they may do so, either with or without an express provision in the acts of Congress ; not as a matter of constitutional obligation, but upon those principles of comity, which authorise the courts of every civilized state to administer law and justice to suitors, although not citizens of the state. Whether Congress possesses the power to coerce the state courts to entertain jurisdiction or not, we are satisfied, that an attempt to exercise such a power, would justly give greater cause of alarm than the vesting of concurrent jurisdiction in the state and federal tribunals.

If it was competent for Congress to create this corporation, to confer upon it the rights and powers, and to require of it the performance of the duties, expressed in the charter, it

was clearly competent to submit these rights, powers and duties, to the decision of the national tribunals. The powers of judicature, must, of necessity, in every well organized government, be co-extensive with the powers of legislation. A government without the power of interpreting and enforcing its own regulations, would not only be feeble, but must become contemptible. The framers of our admirable constitution, therefore, wisely extended the judicial power of the Union, to all cases arising under the constitution and laws of the *United States.* The only difficulty is, in ascertaining whether this be a case of that character.

It was said in argument for the defendant, that the words "arising under" must be understood to mean "growing out of—created by—or brought into being by," the laws of the *United States.*

Let the case before us be tested, by this definition. The bank itself, its capacity to purchase the bill of exchange, its right of property in the bill, and the sum of money therein expressed, all grew out of, were created, and brought into being by, the act of Congress creating the corporation. But for the act of Congress, the case before us could not have existed. It is palpable, that when the case involves the very right of property given and created by an act of Congress, as in this instance, it is "a case arising under the constitution and laws of the *United States.*"

We are of opinion that, to bring the case within the judicial power of the *United States,* it need not be of an unmixed character. If the *principal right, the right of property,* in the subject in controversy, is given, or created, by an act of Congress, made in pursuance of the constitution, it is sufficient.

In this case, the principal right, the general right of ownership in the bill of exchange, and the money for which it was drawn, is of that character. The interest and damages demanded on account of the protest, are but incidents, that may follow the principal, as a shadow follows the substance, and may well be regulated by the *lex loci.*

A distinction was attempted, at the bar, between the cases in which a general right is created by act of Congress, and those in which a penalty, debt, or specific thing, or damages, are expressly created and given by the laws of the *United States;* and it was insisted, that the latter class only ought to

Magill
*v.*
Parsons.

be regarded as cases arising under the laws of the *United States.*

That the distinction attempted is wholly untenable, is evident. The constitution uses the same expression, and in the same sentence, in relation to cases arising under the *constitution, the laws, and treaties.* The distinction can, in no instance, be applicable to a case arising under the *constitution,* and very rarely, if ever, to one arising under a *treaty.* The same words ought to receive the same interpretation ; and where the distinction cannot possibly be applied to the *constitution,* it ought not to the *laws.*

It was admitted, by one of the defendant's counsel, and we think, rightly, that the bank could, constitutionally, be authorized, by Congress, to sue in the circuit courts of the *United States,* for a trespass committed upon its corporate rights or property.

We are unable to perceive any well founded distinction between a suit brought to redress an injury done to the corporate rights in *possession,* and suits to redress injuries to the corporate rights in *action.* They are alike intended to maintain, protect, and enforce the rights of the corporation, conferred upon it by its charter.

A numerous train of decisions in the supreme court tend to prove, and indeed it was conceded in argument, that if this case had been brought originally in a court of the state, it would have been a proper subject of revision and adjudication in the supreme court of the *United States,* in the exercise of its constitutional appellate jurisdiction.

But it was insisted, with great earnestness, that it was not competent for Congress to give original jurisdiction of the case to the subordinate federal tribunals. If we have taken a correct view of the constitution, this argument is not maintainable. The judicial power, granted by the constitution, is granted to the *United States ;* it is declared to extend to certain enumerated cases ; and it is vested in the " supreme court, and such inferior courts as Congress shall, from time to time, ordain and establish."

" In all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be a party, the supreme court, shall have original jurisdiction." " In all the other cases, before mentioned, the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations as Congress shall make."

As the constitution gives to the supreme court original ju-
risdiction in two only of the eleven cases, enumerated in
that instrument, it may be asked, was it the intention of the
framers of the constitution to leave the residue of the origin-
al jurisdiction to be exercised, *exclusively*, by the courts of
the states? If so, the power of Congress to ordain and estab-
lish inferior courts, was worse than futile. The authority to
establish inferior courts, includes authority to confer on them
judicial power. If Congress can create inferior courts, and
give them original jurisdiction, in any case of the nine enu-
merated cases to which the judicial power of the *United States*
extends, and in which the supreme court has appellate juris-
diction only, it is equally competent for Congress to clothe
such inferior courts with original jurisdiction in all the other
enumerated cases, or in so many, and so much of each of
them, as from time shall be demanded, by the exigencies of
the government, and the wants of the people.

This case being one, in our opinion, "arising under" a law
of the *United States*, decided by the supreme judicial tribu-
nal of the nation, to be made pursuant to the constitution,—
our judgment is, that this court has jurisdiction, and that the
demurrer ought to be overruled.

We have to regret, that we have had but few judicial deci-
sions, or former precedents to enlighten our path. We have
been compelled to explore our way, chiefly, by the lights fur-
nished by the constitution and laws themselves, and the gen-
eral principles of law and reason. In the performance of
this delicate and arduous task, we have received great assist-
ance from the arguments we have heard from the bar, on both
sides ; and we shall be happy, if we have been enabled to
come to a conclusion as satisfactory to an enlightened and
impartial community, as it is to our own judgments and con-
sciences.

_____

Circuit Court of the *United States* for the eastern district
of *Pennsylvania*.

THE PRESIDENT DIRECTORS AND COMPANY OF THE BANK OF
THE UNITED STATES *against* THE NORTHUMBERLAND, UNION
AND COLUMBIA BANK.

*Middlesex,*
*July,*
1822.

Magill
*v.*
Parsons.

*Middlesex,*
*July,*
*1822.*

Magill
*v.*
Parsons.

WASHINGTON, J. This question comes before the court upon an agreement of counsel, that judgment should be entered for the plaintiffs for 2980 dollars and 23 cents, subject to the opinion of the court, on the question, whether the plaintiffs, being a corporation established by Congress within the city of *Philadelphia*, can maintain a suit in this court, against the defendants, being a corporation established by an act of the legislature of this state within the jurisdiction of the same, and transacting business therein.

By the second section of the third article of the constitution of the *United States*, it is declared, "that the judicial power of the *United States* shall extend to all cases in law and equity, arising under the constitution, the laws of the *United States*, and treaties made, or which shall be made, under their authority ; to all cases affecting ambassadors, and other public ministers and consuls ; to all cases of admiralty and maritime jurisdiction ; to controversies to which the *United States* shall be a party ; to controversies between two or more states ; between a state and citizens of another state ; between citizens of different states ; and between a state, or citizens thereof, and foreign states, citizens or subjects."

The exercise of the judicial powers is, by the first section of the same article, vested in " one supreme court, and in such inferior courts, as Congress may, from time to time, ordain and establish."

That portion of the jurisdiction intended for the supreme court is not left to be assigned, by Congress ; but it is bestowed upon it, by the same article.

As to the residue of the above judicial powers, it was to be distributed amongst the inferior courts, which Congress might establish, in such proportions as that body, in its wisdom, shall think best.

The first judicial act passed by Congress, in the year 1789, created two courts, the circuit and district courts, within each state, on each of which a certain portion of the judicial authority was conferred. To the circuit court was assigned original cognizance, concurrent with the state courts, of all suits of a civil nature, at common law, or in equity, of a certain value, and where the *United States* are plaintiffs, or an alien is a party, or the suit is between a citizen of the state where the suit is brought, and a citizen of another state. Cognizance in certain criminal cases, is, also confer-

red on the circuit courts, by this section, as well as an appeal

from the district courts respectively. It will be observed, that this section bestows upon the circuit courts original jurisdiction only in civil cases, at common law and in equity, where the value in dispute exceeds the sum or value of 500 dollars, and where the parties to the suit are the *United States,* aliens, or citizens of different states. Cognizance of cases arising under the constitution or laws of the *United States,* or treaties, is not assigned, by this act, to either of the courts, which is established; and consequently, neither of them could take jurisdiction in those cases; since the article of the constitution above recited leaves to Congress the distribution of the judicial powers not assigned to the supreme court, amongst the inferior courts, which that body might ordain. The powers, therefore, not bestowed upon these courts, by legislative provision, remain dormant, until some law should call them into action, by designating the particular tribunal, which should be authorized to exercise them. Jurisdiction in cases arising under the constitution, laws of the *United States,* and treaties, is not limited, by the above article, either as to sum, or citizenship of the parties, but it is independent of those restrictions, unless Congress should impose them. Thus, if an act of Congress should provide, that all cases in law and equity, arising under the constitution, laws of the *United States,* and treaties, should be heard and decided, by the circuit or district courts, without any qualification whatever, there could be no doubt on my mind, that the courts to which that jurisdiction should be assigned, might exercise it, though the plaintiff and defendant should be citizens of the same state, and let the sum in controversy be what it might. But Congress might grant to those courts only a part of the general jurisdiction in those cases, by limiting it to a certain sum, or description of suitors, reserving the residue for future distribution, if it should so please that body to make the grant.

It follows from what has been said, that when the cognizance of cases arising under a law of the *United States,* is given to the circuit court without limitation, as it is in patent and copy-right cases, the value in dispute and the citizenship of the suitors have nothing to do with the jurisdiction of the court.

That this is a case arising under a law or laws of the *United States,* is unquestionable. It never could have arisen, if

*Middlesex,*
July,
1822.

Magill
*v.*
Parsons.

the legislature, in the exercise of its constitutional authority, had not incorporated the bank of the *United States.*

The jurisdiction of this court over the case, is given, by that section of the law of incorporation, which authorizes the corporate body to sue and be sued in all state courts having competent jurisdiction, and in any circuit court of the *United States.*

I have thus endeavoured, in as few words as possible, to express what is much better expressed, by the circuit court of *Kentucky*, in the case of *The Bank of the United States* v. *Roberts.* In giving this opinion upon the question of jurisdiction arising in this case, I refer, with great satisfaction, to the opinion in that case, upon this subject, for the purpose of stating my entire concurrence.

Judgment for plaintiffs.