Littleton, Judge,
delivered the opinion of the court:
The jurisdictional act in this case, approved May 14, 1926, 44 Stat. 555, as amended by the act of April 11,1928, 45 Stat. 423, authorizes and directs this court to hear, examine, adjudicate, and render judgment in any and all legal and equitable claims of plaintiffs arising under or growing out of the act of January 14, 1889, 25 Stat. 642, arising under or growing out of any subsequent act of Congress relating to Indian affairs; that official letters, papers, documents, and records, or certified copies thereof, may be used in evidence ; that the court shall also hear, examine, consider, and adjudicate any claims which the United States may have against the plaintiffs and any payment or payments made by the United States upon any claim against it by plaintiffs should not operate as an estoppel but may be pleaded as an offset as may gratuities, if any, paid to or expended for said Indians subsequent to January 14,1889; and that if it should be determined by the court that the United States has in violation of the terms and provisions- of any law, treaty, or agreement as provided in section 1, unlawfully appropriated or disposed of any money or property belonging to the Indians, damages therefor should be confined to the valúe of the money or property at the time of its appropriation or disposal together with interest thereon at 5 percent per annum from the date thereof. It should be noted at the outset that the jurisdictional act authorizes this court to determine and award damages for the disposition of any of the property of plaintiffs in violation of the terms and provisions of any law, treaty, or agreement with respect to any claim or claims arising under or growing out of the act of January 14; 1889, supra. The claim of plaintiffs in this case arises under and grows out of such act of 1889. It is claimed that in violation of section 4 of that act and of the agreements subsequently made which embodied the provisions of that and other sections, the defendant, through the Secretary of the Interior who was duly authorized and di *130 reeled, to act for the defendant in that regard, unlawfully disposed of 65,038.33 acres of its timber lands in such a way and under such circumstances as to result in actual damage to plaintiffs in the amount of $340,061.66 in that the defendant sold a certain quantity of pine timber belonging to plaintiffs of that value for which plaintiff received nothing. The other item in plaintiffs’ claim is for $79, 597.12 for which the defendant reimbursed itself out of plaintiffs’ funds as the cost of making a grossly erroneous examination and estimate of certain of its timber lands for the purpose of sale under the provisions of the act of 1889 and agreements entered into pursuant thereto by inexperienced and incompetent examiners and estimators, which examinations and estimates were worthless.
Upon the whole record, which establishes to our entire satisfaction the facts as set forth in the findings, we are of opinion that plaintiffs are correct in their claim as to both items and that they are. entitled to judgment for so much thereof as may be in excess of the total of any offsets to which the defendant may be entitled under the jurisdictional act. „
The defendant contends that if the Commissioner of the General Land Office, the Commissioner of Indian Affairs, and the Secretary of the Interior violated their duties under the law and the agreements with plaintiff, they were guilty of such misfeasance, nonfeasance, and negligence as amount to torts, for which no recovery by plaintiffs can be had under the jurisdictional act; that since an estimate of the quantity and quality of the standing timber made by cruising is wholly the result of the individual judgment of the cruiser, its degree of accuracy may not be definitely determined by a like estimate by another cruiser, based upon his individual judgment, but that its degree of accuracy may only be determined by some different and obviously more accurate method of ascertaining that quantity and quality; that in the event the court should hold that the timber estimates for certain tracts made in the fall and winter of 1896 by Inspector Wright and the cruisers employed by him as set forth in the findings are more nearly accurate than those made by *131 previous examiners for the same tracts, and that since, on the whole, the last determinations as to quantity of timber being larger as to the tracts theretofore sold, that plaintiffs suffered a corresponding loss, then the variance thus shown must be confined to the few tracts examined by Inspector Wright and his experienced and competent examiners, and does not constitute reliable evidence that the previous examinations and estimates .of other tracts not reexamined and estimated were inaccurate in any degree.
In addition, counsel for defendant contend as to the second claim that the expenditures totaling $79,597.12 for making the first examinations and estimates as to the timberlands actually sold under such estimates were tortious or resulted from errors of judgment, and that no recovery may be had; and since, as first contended above, no loss has been established by competent proof, this expenditure cannot be held to have been unlawfully or wastefully made.
We are of opinion that none of these contentions can be sustained under the facts disclosed by the record. Plaintiffs’ claims are not founded upon, nor do they grow out of, any willful or careless neglect of duty by any official of the government authorized and directed to act in the premises. The claims of plaintiffs arise under, grow out of, and are founded upon the express provisions of sections 4 and 5 of the act of January 14, 1889, supra, and the agreements duly made and entered into thereunder, and it is immaterial to plaintiffs’ right to recover that the facts of record disclose that certain officers of the defendant may have acted carelessly and negligently in the selection and appointment of the examiners who examined and estimated certain of plaintiffs’ timberlands upon the basis of which a certain number of acres of timber was sold. The statute or agreement which grants the right upon which the claim is based determines the question of jurisdiction rather than the conduct of the defendant’s authorized agents which constituted the breach. Cohens v. Virginia, 6 Wheat. 264, 379; New Orleans M. & C. R. R. Co. v. Mississippi, 102 U. S. 135, 141; Starin v. New York, 115 U. S. 248; Germania Insurance Co. v. Wisconsin, 119 U. S. 473; Carson v. Dunham, 121 U. S. *132 421; Cunningham v. Neagle, 135 U. S. 1; Hughes v. Northern Pacific R. R. Co., 18 Fed. 106, 110; Magill v. Parsons, 4 Conn. 317, 323, 331.
Tbe facts disclose beyond question that the defendant through the Secretary of the Interior, who was the official authorized and directed to act for the defendant in the matter, selected and appointed thirty-five examiners, twenty-five of whom were inexperienced and incompetent, and that the one really experienced and competent examiner who was made foreman did not and was not permitted to check and verify the examinations and estimates made by the others. The fact that the acts which constituted the breach of duty, or of the agreement, were aggravated does not affect the right of plaintiffs to maintain and recover on the claim arising under or growing out of the statute or agreement. The acts of the defendant through its authorized officer constituted a violation of the terms and provisions of the act of 1889 and the agreements made thereunder, and the jurisdictional act specifically authorizes this court to adjudicate and render judgment on any such claim. See Minnesota v. Hitchcock, 185 U. S. 373; United States v. Mille Lac Band of Chippewas, 229 U. S. 498.
It is unnecessary to discuss in detail the defendant’s contention that the record is not sufficient to establish that plaintiffs in fact sustained a loss, or, if such fact of loss should be held to be established, that the amount thereof cannot be determined except on the basis of mere conjecture. The facts as we have found them to be established by the record are set forth in the findings and need not be repeated here. We are satisfied beyond a reasonable doubt that plaintiffs did sustain an actual loss and that the amount thereof, upon the basis of the examinations and estimates made by Inspector J. George Wright and the experienced and competent estimators employed by hinq the manner in which they selected the various tracts which were reexamined and estimated, and the facts subsequently disclosed by measurement in the log of the timber cut from certain unsold lands previously examined and estimated, was at least $340,061.66. We have so found. The examinations and estimates made by Inspector Wright and his men are clearly established by *133 the record to have been reasonable and in no case in excess of the timber actually standing upon the lands included in the previous incorrect and incompetent examinations of estimates with respect to the 65,038.33 acres of timberland sold. The tracts selected for reexamination and estimate were typical of the entire 115,342.78 acres previously examined and estimated. The facts subsequently ascertained in 1903 with reference to the quantity of timber upon the unsold portion of the 115,342.78 acres verify the reasonableness and accuracy of Inspector Wright’s determination of the quantity of timber on the 65,038.33 acres sold at public and private sales between July and October 1896 in excess of the quantity estimated by the incompetent and inexperienced examiners, and for which plaintiffs received nothing. In Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U. S. 359, which involved a loss of profits which the plaintiff claimed it would have earned if it had been permitted to sell defendant’s goods, the court, after referring with approval to the holding of the court below that damages are not rendered uncertain because they cannot be calculated with exactness, and that it is sufficient if a reasonable basis of computation is afforded, although the result be only approximate, said: “This, we think, was a correct statement of the applicable rules of law. Furthermore, a defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible.” See, also to the same effect, Story Parchment Co. v. Patterson Parchment Paper Co. et al., 282 U. S. 555; Linen Thread Co. v. Shaw et al., 9 Fed. (2d) 17; Prejean v. Delaware-Louisiana Fur-Trapping Co., Inc., 13 Fed. (2d) 71; Calkins v. Woolworth Co., 27 Fed. (2d) 314; Rynveld v. Dupuis, 39 Fed. (2d) 399; Crichfield v. Julia, 147 Fed. 65; Electric Boat Co. v. United States, 66 C. Cls. 333; Hoffer Oil Corp. v. Carpenter, 34 Fed. (2d) 589.
What we have said above applies to the second item of plaintiffs’ claim for $79,597.12, representing the amount paid for which the defendant on May 16, 1911, reimbursed itself out of plaintiffs’ funds for the cost of the inaccurate and *134 grossly incorrect and incompetent examinations and estimates of the timber on 115,342.78 acres, of which 65,038.33 acres were subsequently sold on the basis of such estimates. The act of January 14,1889, supra, provided that the plaintiffs would be charged only with the cost of making “careful, complete, and thorough examinations” by “competent and experienced examiners” which would show “with particularity the amount and quality of all pine timber” upon the lands so examined. The agreement with plaintiffs likewise so provided. These provisions were not complied with and plaintiffs’ funds to that extent were wasted. The examinations and estimates, the cost of which was charged to plaintiffs, were, as denominated by the Commissioner of Indian Affairs and by Congressional committees, wholly worthless as indicating with any degree of accuracy the amount of timber on the land examined, totally unreliable and very much to the disadvantage of the Indians, and so erroneous as to convince anyone that great frauds were committed on the rights of plaintiffs.
Plaintiffs are, therefore, entitled to recover $1,277,800.74 which represents the total of the two items of the claims hereinbefore allowed in the total amount of $419,658.78 with interest at 5 percent on $340,061.66 from July 15, 1896, to date of judgment, and on $79,597.12 from May 16, 1911, to date of judgment. July 15, 1896, is used as a satisfactory equated date for the computation of interest upon the loss and damage sustained with respect to the 65,038.33 acres of timberland which were sold at public and private sale between July 1 and October 1, 1896. The record shows that a total of 32,820 acres was sold at public sale between July 1 and July 15, 1896, and that thereafter tracts aggregating 32,218.33 acres of timberland were' sold at private sale on various dates between July 15 and October 1 when the new Secretary of Interior ordered that no further sales be made on the basis of the original examinations and estimates.
This leaves for consideration the defendant’s claim for offsets under section 3 of the jurisdictional act. This section provides that the court, shall consider and adjudicate any *135 claims made by the United States against plaintiffs for any payments or gratuities paid to or expended for the Chippewa Indians subsequent to January 14, 1889. We have set forth, in findings 19 to 26, inclusive, the claims set up and asserted by the defendant as offsets. We are of opinion that under the provisions of the jurisdictional act and the decided cases that the offsets claimed by defendant are allowable, except those set forth and claimed in findings 19 and 20. The amount of $167,125.52 claimed by defendants as an offset under finding 19 was, we think, clearly a payment made to plaintiffs under and pursuant to an obligation assumed by defendant under the provisions of Art. Ill of the treaty of March 19, 1867. This amount is therefore not a proper offset. With respect to the payment of $223,162.62 made to plaintiffs as set forth in finding 20, it appears that this was the amount of compensation which Congress on June 4,1935, determined to be due plaintiffs for obligations assumed by the United States under treaties of March 11, 1863, May 7, 1864, and March 19, 1867. That determination was made by Congress upon a claim by plaintiffs made to Congress and, in connection with the determination of that claim, the Congress, in the act of June 4, 1935, 49 Stat. 321, provided for the determination and payment from the amount allowed of compensation for plaintiffs’ counsel. The amount so determined and allowed by Congress in the aforesaid act was duly appropriated in the act of June 22, 1936, 49 Stat. 1757, 1765, making appropriations for the fiscal year ending June 30, 1937. This determination and allowance by Congress was made after the jurisdictional act was enacted and, as the record now stands, we think the amount allowed and paid by Congress on the claim there made and considered cannot be treated as a gratuity and allowed as an offset. Counsel for defendant argue that this amount is recoverable under the decision in United States v. Minnesota, 270 U. S. 181, but that case was decided nearly nine years before Congress determined and allowed, and appropriated for and paid plaintiffs’ claim. It must be presumed in the absence of any showing to the contrary that Congress acted in the matter with knowledge of the decision of the Supreme Court. *136 While in the decision in the case of United States v. Minnesota, supra, cited by defendant, the court held that as between the United States and Minnesota the patents to the state covering the swamp lands within these reservations could not be set aside, it does not appear that the rights of plaintiffs as between themselves and the United States under the treaties were considered and finally adjudicated. At the time the Swamp Land Act was extended to the State of Minnesota, the lands in controversy in the case cited were public lands and not within the boundary of any then existing Indian reservation. Thereafter certain lands were included within an area under the terms of a treaty between the United States and plaintiffs. At the time these treaties were made, Minnesota had not made its swamp-land selections and the decision which later held that the Swamp Land Act of 1860 operated as a grant in pmesenti had not been rendered. Upon the record now before us, we are certainly not justified in overruling the considered action by Congress upon plaintiffs’ claim for compensation for these lands which was considered, allowed, and paid by Congress with knowledge of, and nine years subsequent to, the decision in United States v. Minnesota, supra.
"With reference to the other claims for offsets made by defendant under findings 21 to 26, inclusive, totaling $4,675,590.81, we are of opinion that the payment and gratuitous expenditures totaling this amount during the years, for the purposes, and in the amounts set forth in the findings are allowable under the opinions of this court in Shoshone Tribe of Indians v. United States, 82 C. Cls. 23, 55-59, 93, 94; Eastern or Emigrant Cherokees v. United States, 82 C. Cls. 180; Blackfeet et al. Tribes v. United States, 81 C. Cls. 101; Crow Tribe v. United States, 81 C. Cls. 238; Klamath et al. Tribes v. United States, 85 C. Cls. 451.
Counsel for plaintiffs contend in substance that expenditures for certain purposes such as education, assistance to the Indians in practical farming, for the purchase of implements for their use, for the construction and maintenance of agency buildings, for the pay and expenses of agents and other agency employees, and other similar expenditures, were all made under the established governmental Indian policy *137 and were primarily and principally for the benefit of the government and its citizens and only incidentally and remotely for the benefit of the Indians. It is therefore insisted that while such expenditures were not made by the government pursuant to any specific obligation assumed under any treaty or agreement, they were not wholly made for the benefit of the Indians and should not be allowed as offsets for gratuitous expenditures under the provisions of section 3 of the jurisdictional act. These contentions cannot be sustained. They were urged upon the court and rejected in Blackfeet et al. v. United States, supra, and the other cases cited. In the Blackfeet case, this court, after listing various purposes for which expenditures of the character here involved had been made, said:
It is contended by plaintiffs that these disbursements were made for the general administrative expenses of the Indian Service of the United States, and that the record does not show that the plaintiffs, as tribes, received any benefit from such expenditures, or, even if it be assumed they did, to what extent.
It is difficult to conceive any theory under which these expenditures did not inure directly to the benefit of the plaintiff tribes. They were expenditures which the United States was under no legal obligation to make for, or in behalf of, the plaintiffs. They were unqualified gratuities, and, as such, under the plain provisions of the jurisdictional act, are properly chargeable against the plaintiffs as set-offs against the amounts they are entitled to recover.
Upon the question of expenditures made by defendant from public funds for education in nonagency schools, the court pointed out the difference in the provisions of the jurisdictional act in the case of Fort Berthold Indians v. United States, 71 C. Cls. 308, and the Blackfeet case then being considered, and stated, at page 139, that:
The court was convinced that the language of the special jurisdictional act in the above case [Fort Berthold Indians] did not embrace a set-off of gratuities, and stated that governmental Indian schools were maintained from public funds “in the nature of gratuity.” In this case the special act authorizes “set-offs, or counterclaims, including gratuitiesNo such language ap *138 pears in the Fort Berthold Act, and we are of the opinion that in this case it was the intent and purpose of Congress to charge the plaintiffs with all sums disbursed for their benefit over and above those provided for in treaty or other obligations. In addition to this, a supplemental report from the General Accounting Office discloses that while some of the items claimed were expended for attendance upon nonagency schools, the greater number were expended for sending children to mission, boarding, and contract schools not maintained by Government appropriations.
The same contentions that expenditures made by defendant without obligation under its long-continued Indian policy should not be considered as gratuities and offsets against any amounts determined to be due the tribe were considered and denied in Shoshone Trite of Indians of the Wind River Reservation in Wyoming v. United States, 82 C. Cls., 23. Similar expenditures were determined and held to be proper offsets in cases subsequently considered and decided, and hereinbefore cited. The question of governmental policy in relation to Indian affairs is a matter for Congress to determine and since the jurisdictional act directs this court to determine and offset all amounts gratuitously expended for the benefit of the Indians, and, since any amounts expended from public funds for the benefit of the Indians in maintaining and carrying out that policy without obligation therefor under any treaty or agreement would be gratuities, they must be allowed as offsets under the plain terms of the jurisdictional act. Compare United States v. Vassar et al. (License Tax Gases), 5 Wall. 462, 469; United States v. Trans-Missouri Freight Association, 166 U. S. 290, 340; Del Monte Mining and Milling Co. v. Last Chance Mining and Milling Co., 171 U. S. 55, 67.
Inasmuch as the total of the allowed offsets exceeds the total which plaintiffs are entitled to recover, plaintiffs are not entitled to judgment and the petition must be dismissed. It is so ordered.
WhitakeR, Judge; GREEN, Judge; and Whaley, Chief Justice, concur.
Williams, Judge, took no part in the decision of this case.