Booth, OMef Justice,
delivered the opinion of the court:
During the war, on March 19, 1918, the plaintiff contracted with the defendant to purchase and dispose of all manure collected from public animals, i. e., horses and *554 mules, at Camp Shelby, Mississippi. The manure was to be delivered by the defendant to the plaintiff “f. o. b. rail-* road cars at the railroad siding or dumped on a compost pile on a farm to be provided by the plaintiff within three miles of the camp.” During the early period of the contract the defendant observed its terms with reasonable accuracy. For some reason, not ascertainable from the record, the defendant soon disregarded its contractual obligations, and did not, and apparently made no effort to, comply with the stipulations of the contract. The plaintiff made the necessary preparations to accept and dispose of the manure, was active in securing sufficient cars to affect its transportation, and possessed three farms within three miles of the camp whereon it might have been deposited.
We have said the court can not from the record ascribe a reason for the defendant’s default. The observation is predicated upon the absence of a legal reason. Inconvenience and fancied hardships are obviously not legitimate defenses. If the defendant discovered subsequent to making the contract that onerous duties had been assumed, it may not escape liability by; yielding to a course of performance which imposes a loss upon the plaintiff, notwithstanding the supposed benefits which accrued to the defendant. No attempt is made to dispute the positive fact that the defendant did not comply with the obligations of its contract. No assertion is made that the plaintiff received anywise near the quantity of manure he was entitled to receive, and nowhere does it appear that the plaintiff was at any time in default in observing his obligations under the contract. Manure was not delivered, except as stated in the findings, to the plaintiff. The defendant for its own convenience diverted deliveries and by its own acts and conduct disposed of huge quantities of manure and in its own adopted way to the prejudice of plaintiff’s rights under the contract. Instead of making deliveries as the contract provided the defendant deposited the manure in a huge compost pile, not upon the farms of the plaintiff, but upon a site selected by itself; poured oil thereon and attempted to consume it by burning. It is difficult to conceive of a more flagrant disregard of contractual obligations than obtains *555 in this case. The sanitation of the camp and the health of the surrounding community were involved in the terms of the contract. The disposal of manure from a total of 99,000 animals was an undertaking of no small magnitude; it required financial outlay and preliminary preparation vast in extent. The plaintiff, as previously noted, purchased three separate farms, all within three miles of the camp, and not a single delivery was made thereon by the defendant. Plaintiff had contracted for the sale of the manure, had customers-ready and willing to buy and transport it away from the camp and his farms, and was prevented from realizing the purchase price. The defendant seems to seriously contend that the defendant’s deliveries under the contract obtained except in so far as prevented from so doing by an epidemic' of glanders among the horses, and in any event the defendant by the express terms of the contract was only bound to deliver such quantities of manure as was collected, not the quantity produced.
As to the first contention, we think it disposed of by the findings. The court makes allowance for the epidemic of glanders. With respect to the remaining question, there is no disagreement. Of course the defendant guaranteed no specific quantity of manure, and the plaintiff was to receive only the quantity collected. The gravamen of the complaint is predicated upon this very basis; the existing difficulty lies in the determination of the amount collected, not that any was not collected. In the ascertainment of damages two factors are indisputably present; First, that a huge quantity of manure was collected at the camp and only a portion of the same was delivered to the plaintiff. The daily average number of horses and mules at the camp for the first nine months of the contract period was 9,000. From each animal there was collected a total of 1,500 pounds, or a total quantity for the period of 60,750 tons. Fifteen thousand tons were delivered as per contract, leaving a balance of 45,750 tons undelivered. The witnesses whose testimony forms the basis of the computation — witnesses of long experience in handling horses and mules — fix a greater quantity than given in the findings. The court from the record deducts from a basis of production a liberal allowance upon the theory *556 that production is not the equivalent of collection, and a reasonable difference is allowable because of a manifest inability to deliver full quantities of production. In other words, taking the average production as proven by' a computation predicated upon the amount delivered during a stated period and the number of animals present at the camp during that period, the basis of individual collection is ascertainable within reasonable bounds. With the result thus attained, more than corroborated by expert testimony, and making a wholesome allowance for wastage and inability to deliver any more than was collected, we think the quantity which was collected but not delivered is, to say the least, well within the figures given in the findings. In our view of the facts the basis adopted eliminates conjecture and speculation, and produces a loss proven by reasonable certainty. The plaintiff is not to be denied a judgment because of difficulties in ascertaining damages. If the proof establishes a loss within a reasonable degree of accuracy and satisfies the court that beyond doubt a loss of this extent obtained, plaintiff is entitled to judgment for the amount. The plaintiff had customers ready and willing to purchase from him at $1 per ton. The record sustains a market value of $1 per ton. We think that under Finding XI the plaintiff is entitled to a judgment for $45,115. It is so ordered.
Sinnott, Judge; Geeen, Judge; Moss, Judge; and GRAham, Judge, concur.