Williams, Judge,
delivered the opinion:
The plaintiff, on April 3, 1919, entered into a contract with the defendant, through Admiral C. W. Parks, Chief of the Bureau of Yards and Docks of the Navy Department, whereby it agreed to “ construct and complete at the Naval Academy, Annapolis, Maryland, a four-story reinforced concrete and granite building, * * * together with a connecting terrace to the existing gymnasium, and to furnish and install complete plumbing, drainage, heating, ventilating, and electric lighting systems and an electric freight elevator,” in accordance with the provisions of certain specifications, which were attached to and made a part of the contract.
The plaintiff was to receive for the work complete, a lump sum of $662,692.00. Under paragraph 6 of the contract this amount was to be increased or decreased as follows:
“For timber piles in place, required * * *, in excess of the number called for on the drawings, the price stipulated above will be increased 'at the rate of seventy cents ($0.70) a linear foot of pile, measured from point to cut-off;
“ For each linear foot of timber pile in place, based on the number shown on the drawings, as may be required * * *, in excess of or less than 45 linear feet measured from point to cut-off, there will be added to or deducted from the amount stipulated above, the sum of seventy cents ($0.70) or twenty-five cents ($0.25), respectively.”
The Government reserved the right to make “ such changes in the contract, plans, and specifications as may be deemed necessary or advisable.” The work was to be completed within two hundred and seventy calendar days, with a provision for liquidated damages at the rate of $400 a day for each day of delay in completing the work within the stipulated time.
The plaintiff brings this suit to recover the sum of $20,033.91, based on various alleged breaches of the contract by the defendant, which will be discussed in the order of their statement in plaintiff’s brief.
*519 Olaim based on the alleged excess deduction on account of shorter lengths of pile driven, $%,061.0Q — Paragraph 48 of the specifications provides that “ piles shall have a length sufficient to secure the penetration required,” and “ if conditions encountered prevent the securing of the required penetration with one length, piles shall be spliced * * It is further provided in the said specifications that “ for purposes of estimating, proposals shall be based on a length of pile in place, between point and cut-off, of 45 feet.”
The plaintiff sublet the contract of driving the piles. The subcontractor did not furnish piles of an average length of 45 feet. Some were as short as 30 feet, others slightly more than 50 feet, the average length being about 39 feet. There were 701 piles driven. The Government allowed an average length of 28 feet on 698 piles, and under the provisions of paragraph 6 of the contract, deducted the sum of $2,948.50. The plaintiff does not contend the amount of the deduction was not correct, or that it was not computed and taken in accordance with the terms of the contract, but contends that if the subsurface conditions at the site had been as represented by the Government, an average penetration of 40 feet could have been had, in which case a deduction of only $887.50 would have resulted. It seeks to recover the difference between that amount and the amount actually deducted.
The plaintiff is not entitled to recover on this item of the claim. The contract clearly contemplates and the parties understood that the average length of the piling might be ■more or less than 45 feet. This was the reason the provision was inserted in the contract that the stipulated amount to be paid for the completed work would be added to, or reduced, in case the length of piling put in place exceeded 45 linear feet or fell short of that measurement. The deduction was made in strict accordance with the terms of the contract.
Olaim. for $1¡.,1^631¡. on account of additional labor, material, demurrage, overhead, salaries, etc., incurred by reason of an undisclosed sea wall not shown in plans and specifications. — Plaintiff’s representative, prior to the time its *520 bid was submitted, was shown drawings by the defendant’s officer in charge of the work, which purported to show the subsurface conditions of the site where the piling work was to be performed. These drawings did not disclose a sunken sea wall under part of the site, which was encountered when the piles were being driven. Other charts or plans in possession of the Government and on file in the office of the Superintendent of Buildings and Grounds at Annapolis showed this sunken sea wall and other obstructions.
Paragraph 26 of the specifications provides:
“ 26. Buried coNstructioNs. — Such information as the Government possesses regarding sewers, pipes, and other construction beneath the surface of the ground on the site of the work may be obtained from the officer in charge.
“ The Government does not guarantee the information given to be correct or that other buried constructions will not be encountered, and does not assume any risk or responsibility in connection therewith. Intending bidders will have the privilege of examining the site, and they should satisfy themselves as to existing conditions.”
While the specifications provide that the Government does not guarantee the information given to be correct and does not assume any risk or responsibility in connection therewith, and states that intending bidders will have the privilege of visiting the site and satisfying themselves as to existing conditions, the plaintiff had a right to rely upon the plans submitted to him as showing the true conditions of the site. The plaintiff was assured that “ such information as the Government possesses regarding sewers, pipes, and other construction beneath the surface of the ground * * * may be obtained from the officer in charge.” The officer in charge did not furnish the plaintiff with all the information in the possession of the Government as to buried construction at the site. Information which the Government had in its possession, and did not disclose to the plaintiff, showed a buried sea wall across part of the site, which the plaintiff encountered in • driving the piling. The plaintiff was misled as to the true subsurface conditions at the site affecting the driving of the piles and is entitled to recover any loss or damage resulting to it by reason thereof. United States v. Atlantic Dredging Co., *521 v. S. 234; Hollerbach v. United States, 233 U. S. 165; Spearin v. United States, 248 U. S. 132.
The plaintiff is, therefore, entitled to recover the sum of $767.83, the extra cost incurred in removing the sea wall, and the sum of $304.00, representing the cost incurred on account of piles broken when driven against the sea wall.
It is not entitled to recover the sum of $1,977.60, paid for demurrage on cars of granite, or the item of $300, its cost of superintendence and clerk hire for the three weeks the work of driving piling overran the progress schedule. The plaintiff contends the delay of three weeks in the piling work was caused by the sea-wall obstruction; that this delay caused the delay in laying the concrete foundations, which delay in turn delayed the erection of the derrick towers for the removal of the granite from the cars as it arrived, which necessitated the payment of the demurrage charges by plaintiff, or the incurring of extra costs and labor in removing the granite from the cars and storing it as it arrived, and handling it again when placed in the buildings.
The plaintiff’s contention that it was delayed three weeks in driving the piles because of the sea-wall obstruction is not sustained by the facts. The sea wall was encountered in a comparatively small area of the site where the piles were driven, and its presence was not discovered until nearly a week after the work was started, at which time the driving equipment was shifted to another position, where the pile driving was continued while the obstruction was being removed. Ten days or two weeks later another part of the sea wall was encountered, when the equipment was again moved and the driving of piles continued at another place while this part of the wall was removed. In the ordinary progress of the work of driving piles it was necessary to change the position of the driving equipment from time to time. The only shifts of this equipment out of the ordinary are the two mentioned, which, concededly, were caused by the sea-wall obstruction. The time consumed in moving the driving equipment on these occasions is not shown, but it could not have been more than a few hours at most, as the record does not show any serious interruption or delay in the *522 work of driving piles, on any day when piles were driven. More than 650 of the 701 piles driven by plaintiff did not encounter the sea wall, and its existence did not delay the pile-driving work to any appreciable extent. The Government was not responsible for the delay in the construction of the concrete foundations, or for the conditions that prevented the plaintiff from being able to have its derricks erected in time so that the granite could be immediately hoisted from the cars and placed in the building as the cars arrived. Whether convenient storage space was available where the granite could have been placed as it arrived until such time as it could be put in the building is not material, as it clearly appears it was less expensive to the plaintiff to pay the demurrage charges than it would have been to remove the granite from the cars, store it, and rehandle it later when it was set in the building.
Claim based on alleged delays occasioned by change in flans of the roof and the vestibule entrances-. — The Government reserved the right in the contract to make such changes in the plans and specifications as might be deemed necessary or advisable. Pursuant to this authority, the Government notified the plaintiff of proposed changes in the roof and also in the vestibule entrances to the building. Plans embodying these changes were submitted to the plaintiff and the work was done in accordance with the changed plans and specifications. The increased cost to the plaintiff of making the aforesaid changes was determined by a board of officers duly appointed under the provisions of the contract, which determination was approved by the Chief of the Bureau of Yards and Docks, and by virtue of change orders issued on January 8, 1921, plaintiff was paid the sum of $8,201.07, because of increased cost incurred for labor and material in making changes as to the roof, and the sum of $4,730.18 as to the increased cost incurred for labor and material in making the changes in respect to the vestibule entrances.
The contract provides that cost of changes, ascertained by a board of officers “ when approved by the Chief of the Bureau of Yards and Docks, shall be added to or deducted from the contract price, and the contractor agrees and con *523 sents that the contract price thus increased or decreased shall be accepted in full satisfaction for all work done under the contract.”
This stipulation is a valid one, and the decision of the Chief of the Bureau of Yards and Docks, as to the increased compensation plaintiff is entitled to receive because of the changes in question, is conclusive in the absence of a showing of fraud or of such gross error as may imply bad faith, amounting to fraud. Moran Brothers Company v. United States, 61 C. Cls. 73; Eric Lange et al. v. United States, 61 C. Cls. 682.
The provision of the contract authorizing changes, carried with it the reasonable implication that if such changes were made, delay in the prosecution of the work might result. In Moran Brothers Company v. United States, supra, it was said (p. 102) :
“ Changes were authorized, and this implied that they would, or at least might, produce delays. The board’s determination settled any compensation due on this account. It was never contemplated * * * by the contract that delays incident to changes would subject the Government to damage beyond that involved in the changes themselves. * * * But the right to make changes was a right expressly contracted for and if the defendant were made liable for consequential and other damages attributable to delays resulting from changes, the result would be either that the stipulated right to make changes was not effective or that the cost of the vessel might be vastly increased.”
In McCord v. United States, 9 C. Cls. 155, the court said:
“ This privilege of the United States to make alterations on the terms stated being expressly provided for in the contract, the contract price related to that privilege as much as to any other provision in the contract, and therefore it must be taken as included in that price, and paid for in it. And the United States' can not be held liable in damages for exercising a privilege they had purchased, but only for abusing it; and the fact is found that they did not abuse it, but made the alterations shown without unreasonable delay.”
While some time elapsed between the time when the Government determined to make the changes involved, and the time when the altered plans and specifications were delivered to the plaintiff, it does not appear that the delay was unreasonable .or arbitrary, or was greater than was necessary *524 to enable the defendant to properly prepare and perfect the proposed changes. The plaintiff was granted an extension of time of 30 days because of these changes, and has been paid its extra costs and expenses resulting therefrom, ascertained in the manner provided in the contract. The plaintiff’s claim for damages incident to the delay caused by the changes must be disallowed.
Claim for items aggregating $8,876.86 for additional costs and expenses incurred Toy plaintiff by reason of a delay of %05 days in the final completion of the contract. — The work was completed 205 days after the time stipulated in the contract for its completion. During this period the plaintiff incurred costs and out-of-pocket expenses, for increased cost' of labor, increased liability insurance, incidental expenses at the site, general executive’s time, superintendence and clerical work in New York, and rental, amounting to $8,876.87.
In passing on the plaintiff’s right to recover in respect to any, or all, of these items, it is only necessary to point out that the delay on which they are based was not caused by the acts of the Government. The plaintiff in charging the Government with the responsibility for the entire delay of 205 days predicates its contention mainly on the three weeks’ delay in doing the piling work. It is contended the delay was caused by the presence of the sea-wall obstruction running across part of the site, information as to the existence of which was withheld from the plaintiff; that this delay dislocated the orderly sequence in which various parts of the work were to follow each other in the plaintiff’s progress schedule; that the delay in the piling work delajred the construction of the concrete foundations; that this delay prevented plaintiff from the erection of its derrick towers for the removal of granite from the cars as they arrived, and that this held up and delayed the setting of the granite, and that this in turn occasioned other delays until the accumulated delays, together with the delay occasioned by the change in plans of the roof and the vestibule entrances to the building resulted in causing the 205 days’ delay in completing the contract. This contention falls because of the plaintiff’s failure to show the sea-wall obstruction caused the three weeks’ *525 delay in the piling work. We have already considered that matter and have pointed out that the sea wall crossed only a small portion of the site; that at least 95 per cent of the piles driven never encountered it; and that its presence did not at any time cause a suspension, or any appreciable delay in the piling work. We have found that the Government did not cause the delay of 205 days in completing the work under the contract, and, therefore, plaintiff is not entitled to recover on these items of its claim.
Claim for $138.38 for extra worlc in putting expansion joints in the terrace roof. — The building was to be connected with an existing building by a terrace roof, which plaintiff under the contract was required to construct. The plans, for the connecting terrace roof did not provide for expansion joints. The Navy Department, on November 13, 1919, wrote a letter directing plaintiff to provide expansion joints in the connecting roof. Plaintiff complied with the department’s directions and placed expansion joints in the connecting roof at an actual cost of $138.38. This work was performed in pursuance of written orders by authorized agents of the defendant. It was extra work, not provided for in the contract, for which the plaintiff is entitled to be compensated.
The plaintiff is also entitled to recover $533.19, the amount retained by the Government on the execution of the qualified release when settlement was made with plaintiff for work done under the contract. This was admittedly due the plaintiff and was withheld without authority of law.
Judgment will be awarded the plaintiff for the sum of $1,143.40, made up of the following items: $767.83, cost incurred in removing parts of the sea wall; $304.00 for broken piles which encountered the sea wall when being driven; $138.38, extra cost incurred in putting expansion joints in the terrace roof; and $533.19, the amount retained on execution of the qualified release.
It is so ordered.
Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.
Whaley, Judge, took no part in this decision, he having heard the case while commissioner of the court.