Geeen, Judge,
delivered the opinion of the court:
The plaintiff brings this action to recover for alleged breaches of a contract made for the construction of several hangars and work in connection therewith at Langley Field, Virginia. The material parts of the contract are set out in Finding 2.
The contract provided that the defendant was to furnish the contractor part of the materials and plaintiff the remainder. The plaintiff claims that he was led to believe by the plans, specifications and statements made by the construction quartermaster that a railroad track would be constructed parallel with and adjacent to the proposed location for the hangars and that this constituted one of the considerations for the contract. The evidence, however, fails to show that any contract or agreement was made by defendant to construct such a railroad track. In the absence of any agreement, the plaintiff can not recover for cost and expense incurred by reason of the defendant having failed to construct such a railway and the claim of the plaintiff for damage on this account is rejected.
Another claim made by plaintiff is on account of delays alleged to have been sustained by reason of a change order with reference to the foundations.
The contract showed the elevation to which the excavations for the foundations were to be extended. Shortly after plaintiff began the excavations it was discovered that the soil was unsuitable for sustaining the foundations and the matter being called to the attention of the defendant, it was ordered by the latter that the foundation at Hangar P be *165 placed upon piles. The defendant also issued a change order by which plaintiff’s contract price was increased by $5,867.25, of which $3,346.40 was for the construction of piling foundations for Hangars N and P in accordance with revised plans which had been determined. The construction of the pile foundations delayed the work and the change order extended the date for completion forty-five days.
The defendant contends that as the right to make changes was stipulated in the contract and the plaintiff accepted the change order, the price then fixed for the work was full compensation for making the changes and in the absence of a showing that the Government delayed the work required to make the changes plantiff can not recover his incidental costs and damages resulting from the delay occasioned. But we do not think the change made necessary by soil conditions, unknown when the contract was made, was such a change as was contemplated by the contract. The case is almost exactly similar to that of Rust Engineering Co. v. United States, 86 C. Cls. 461, 475, wherein it was said that—
The changes made necessary by reason of the conditions encountered in excavating for the foundation of the building were not reasonable changes within the scope of the drawings and specifications as contemplated in Art. 3 of the contract, but represented important changes based upon changed conditions which were unknown and materially different from those shown on the drawings or indicated in the specifications.
And it was held that the plaintiff therein might recover the extra cost directly attributable to the delay caused by the change order.
Also in Levering & Garrigues Co. v. United States, 73 C. Cls. 566, 577, it was said:
The act of the contracting officer in granting the plaintiff an extension of time in which to complete the contract equal to the delay caused by the Government does not relieve the defendant from liability to the plaintiff for losses sustained by it by reason of such delay. [Citing] Crook Co. v. United States, 59 C. Cls. 348; William, Cramp & Sons v. United States, 41 C. Cls. 164.
*166 Following the rule laid down in these cases, we hold that the plaintiff is entitled to recover on the item last considered.
It is conceded that defendant delayed in furnishing the roofs, but it is argued that there was no obligation to furnish the l'oofs earlier than it did and that plaintiff was not damaged by defendant’s delays in this respect. We do not agree, and hold that plaintiff is also entitled to recover on this item.
Without reviewing the evidence, which is fully set out in the findings of fact, we hold that the plaintiff is entitled to recover on account of delays caused by the defendant in the completion of the boiler houses.
Defendant also delayed in furnishing the glass, but we concur in the findings of fact made by our commissioner that the extent of such delay was so small as to be negligible.
Finding 12 shows that the plaintiff was also delayed by the failure of defendant to furnish the plumbing fixtures.
Owing to the fact that these delays to some extent overlapped, the total amount which the plaintiff was delayed through the fault of defendant can not be exactly fixed. The plaintiff makes claim for a total of 140 days’ delay, but the plaintiff can not be allowed for the delay caused by the construction of an additional hangar for the reason that the contract made provision for its erection at the option of the defendant. Plaintiff claims 40 days’ delay in this respect but whatever delay might have been caused by reason of this addition to the work was not attributable to the defendant] but caused by the contract. Upon consideration of all of the evidence we concur in the report of our commissioner that the total amount of delay attributable to defendant was approximately 90 days, and that by reason of these delays plaintiff incurred additional cost for salaries paid straight-time employees of $8,664.29, during this addition to the time necessary for the completion of the contract, and that the reasonable rental value of plaintiff’s equipment which was kept on the job for that time was $4,020.
Plaintiff asks for overhead and profit on the items mentioned in the preceding paragraph, but we think that these *167 items are matters of expense upon which plaintiff is not entitled to profit except as it is included in the cost of the work and that any additional overhead will be covered by the cost of salaries and the rental value of plaintiff’s equipment. Plaintiff’s claim in this respect is therefore rejected.
Plaintiff’s claim for damages on account of repairing the heating lines presents a more difficult question. The contract required plaintiff to install complete a vacuum return steam heating system and that all pipe be so installed that it might contract or expand freely without damage to any other work or injury to itself, and provided that the contractor should make a hydrostatic test of the steam pipe and that “the IT. S. will furnish the steam.” The contractor did not make a hydrostatic test but did make a test with compressed air. After the plant was turned over to the defendant and the steam was turned on, the expansion caused by the heat of the steam resulted in a number of cracks in the joints or pipes and consequent leakage. Defendant required plaintiff to repair this damage, which it did, and plaintiff now seeks to recover the cost thereof, but defendant insists that as plaintiff did not make any hydrostatic or steam tests he can not recover on this item. Plaintiff replies that defendant furnished no steam with which to make the test provided by the contract.
A proper test of the pipes and joints could not be made without steam. A hydrostatic test being made with cool pipes, like the compressed air test, would result in the joints being screwed up too tight and breakage would follow when steam was turned on. The defendant was not prejudiced by the failure to apply a hydrostatic test. Breakage could only be avoided by the use of steam. We think it may be presumed that if steam had been furnished the plaintiff would have pursued the ordinary and natural course of not tightening the joints completely until the heat had been fully applied and if this was done there would have been no breakage. The defendant did not furnish steam, although the contract expressly provided it should do so, and it appears to us that the failure of the defendant to furnish steam for a proper test was the primary cause of the damage *168 which resulted. Plaintiff was required to repair the piping system and did this at a cost of $800 which we think he is entitled to recover.
It should be noted in this connection that the provision in the contract that the defendant was to furnish the steam follows immediately after the provision for the hydrostatic test and it is a question whether, as the contract is drawn, the words “hydrostatic test” were not intended to refer to “steam test” although a hydrostatic test is made with water.
In Finding 17 we have adopted the report of our commissioner which shows that delays caused by defendant made it necessary to bury certain water lines described in the finding, and the cost of the work and their removal after its completion was $500. In this finding, we concur.
Finding 18, taken from the commissioner’s report, shows that the reasonable value of work done in constructing brick corners for the hangars [which were not covered by the contract or specifications but required by the defendant] was $1,320.
The evidence shows that reasonable overhead on a small job done in connection with the pipe lines, at a time when other work was not going on, was 15 per cent. There is no direct evidence as to the overhead on the other items of work which we have found plaintiff entitled to recover, but it evidently would be less and we think it would be at least 10 per cent and have so found. Profit would be included in the reasonable value of the work and perhaps overhead also, but we have not included overhead in our estimate of the value of the extra work for which plaintiff is entitled to recover, and therefore make an allowance to plaintiff of an additional sum of 15 per cent on the value of the work done in connection with the pipe lines and 10 per cent on the value of the work done in constructing the brick corners.
In accordance with what has been said above, we conclude that the plaintiff is entitled to recover on account of delays caused by defendant the items of $3,664.29 and $4,020 as specified in Finding 14; the item of $800 on account of repairs to the heating system as specified in Finding 16; also the item of $500 specified in Finding 17; and $1,320 specified in Finding 18. To the item of $500 there should *169 be added 15 percent for overhead and to the item of $1,320 10 per cent for overhead. With these additions the total allowed plaintiff is $10,511.29.
Judgment accordingly will be awarded plaintiff for $10,511.29. It is so ordered.
Whaley, Judge; Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.