Green, Judge,
delivered the opinion of the court:
On September 11, 1933, plaintiff entered into a contract with the defendant by which the plaintiff agreed to furnish, all labor and materials and perform all work required for the construction and alteration of certain buildings at the United States Marine Hospital, Stapleton, Staten Island, New York, in accordance with the specifications, schedules, and drawings annexed to the contract, for the sum of $1,957,426. There was much delay in the completion of the contract, mostly caused by the defendant, as will hereinafter be shown and the defendant granted extensions in the contract time for performance and assessed no liquidated damages against plaintiff. The plaintiff, however, claims that it was greatly damaged by reason of delays caused by the defendant and its petition asks recovery for $216,324.39.
The plaintiff made extensive preparations to perform the entire contract work in orderly sequence within the time specified in the contract and by the time notice to proceed was issued by the defendant the plaintiff had sublet the various classes of work. From this time on there followed a period of rise in cost of both material and labor.
The plaintiff, through a subcontractor, commenced excavating for foundations, on notice to proceed, but it was soon discovered that the soil conditions at the nurses’ home and the main building sites were such that foundations prescribed by the contract drawings consisting of ordinary reenforced concrete footings resting on the soil were insufficient to sustain the weight to be put upon them. Tests made by the plaintiff indicated clearly the need of a pile foundation for these buildings. The defendant’s officials being unwilling to make the change, plaintiff urged upon defendant the necessity thereof and finally, after considerable work had been done in accordance with the original contract and after much delay, defendant admitted the *564 necessity of pile foundations and directed their construction. By reason of this change the defendant entered into a new contract with plaintiff to pay for the work and materials necessitated thereby. Plaintiff performed this work, was paid the contract price for it, and made a profit of $44,215.82.
The change in the foundations caused a great amount of delay during which the cost of labor and materials for the contract work as a whole advanced very materially to plaintiff’s damage. Plaintiff was given additional time in which to complete the job but was paid nothing for the additional ■cost of labor and materials and plaintiff seeks to recover the amount of costs so incurred. In another branch of its case plaintiff also asks damages for the alleged failure of the defendant to release in time the old laundry building which was necessary in order to continue the work. Here again the plaintiff was allowed an additional 65 days for performance of the contract on account of this delay but it received nothing by reason thereof and claims damages on .account of overhead incurred for the period of this delay.
It will be seen that plaintiff’s case may be divided into two parts — one, an action to recover damages in the amount of additional costs incurred by reason of being wrongfully delayed by defendant through the failure to provide proper plans for the foundations; in the other, plaintiff asks damages directly for the time lost by reason of the failure to release the old laundry building.
The case is controlled by an opinion of this court rendered in Rust Engineering Co. v. United States, 86 C. Cls. 461, a case founded on a very similar set of facts where the contract plans for the foundations were insufficient and the -contract provisions were in some respects exactly the same as in the case here involved, by reason of which we have used some of the same findings. (See finding 4). In the Rust Engineering Co. case the court said:
_ The changes made necessary by reason of the conditions encountered in excavating for the foundations of the building were not reasonable changes within the scope of the drawings and specifications as contemplated in Art. 3 of the contract, but represented important changes based upon changed conditions which were unknown and materially different from those *565 shown on the drawings or indicated in the specifications. Such changes were, therefore, clearly not within the contemplation of either party to the contract at the time it was made. On the facts disclosed plaintiff is entitled to recover on this item.
The conclusions reached in the Rust Engineering Co. case, supra. are supported by the opinion in the case of Maurice H. Sobel v. United States, 88 C. Cls. 149, wherein the language used in the Bust Engineering Co. case. is quoted and approved.
In the Sobel case, supra, it was also held that the plaintiff might recover the extra costs attributable directly to the delay caused by the change order.
Defendant cites a number of cases in which it was held that where a contract provided for changes and a new contract was entered into providing that the changes should be made at an agreed price, there can be no recovery on account of delays caused by the changes. We need not review these cases as the deciisons therein were made upon a state of facts which differ from those in the case at bar. In most if not all of them the changes were contemplated by the contract and they have no application here.
As a further defense to plaintiff’s action it is argued that there were other delays not caused by the fault of the defendant. This is true and plaintiff cannot recover on account of such delays, but the delays caused by the faulty plans for the foundations are carefully segregated in the findings. It should be noted here that the contracting officer of defendant granted an extension of 383 days because of delays not the fault of plaintiff, especially the delay due to the change of design in the foundations. This did not include 65 days afterwards granted on account of delay in releasing the old laundry building.
It is also argued on behalf of defendant that the plaintiff not only suggested that the changes should be made in the foundation plans but urged the defendant to change them and therefore cannot complain. This is no defense. It was plaintiff’s moral duty if not its legal obligation when it discovered the foundation plans were insufficient for safe construction to so advise the defendant and request a change. We have found that the plans for the foundations *566 were in fact faulty and that foundations constructed in accordance therewith would have been insufficient. If the foundations had been laid in accordance with the original plans in all probability the Government would have sustained a loss far exceeding the amount of damage now claimed by the plaintiff.
(Decided April 7, 1941)
Mr. Frederick Schwertner for the plaintiff. Mr., Joseph A. Gerardi was on the briefs.
Mr. Assistant Attorney General Francis M. Shea for the defendant. Messrs. Rawlings Ragland, Oscar II. Dmis, and Henry Fischer were on the briefs.
The case at bar parallels the Rust Engineering Co. case, supra, and is quite similar to the Sobel case, supra. In both of these cases the right to make changes was stipulated in the contract - and plaintiff accepted the change order. Nevertheless it was held that the plaintiff might recover the cost and damages resulting from the delay occasioned, because the change made was not such as was contemplated by the contract. On similar facts we make the same holding in the case at bar and for the same reasons conclude that Articles 3 and 4 of the contract do not prevent a recovery by the plaintiff herein for the damages sustained by the delay.
Finding 8 shows that the plaintiff incurred additional cost and expenses in the total sum of $177,908.14 because of the delay of 268 working days due to the faulty design of the original plans for the foundations of the main building. This does not include the cost of overhead during 65 days of delay caused by the failure to release in time the old laundry building, which we have found amounted to $9,367.80.
The plaintiff is entitled to recover the sums of $177,908.14 and $9,367.80, or a total of $187,275.94. It is so ordered.
Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.
SUPPLEMENTAL OPINION ON MOTION FOR NEW TRIAL
*567 Geeen, Judge, delivered the opinion of the court:
The motion for a new trial is based upon article 4 of the contract, set out in Finding 4 of the Special Findings of Fact which precede the original opinion. Article 4 of the contract, among other things, provides that the contracting officer may make changes in the drawings and specifications for the work, and that any difference in cost or difference in time resulting from such changes shall be adjusted as provided in article 3; that is, “an equitable adjustment shall be made and the contract shall be modified in writing accordingly.”
Article 4 of the contract also provides that if “the contractor encounter, or the Government discover, during the progress of the work, subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, the attention of the contracting officer shall be called immediately to such conditions before they are disturbed.” It is argued that this provision directly applies to the situation which was found to exist in the case at bar wherein the soil conditions were found to be such as to make it necessary that the foundations for the building be constructed on a new and different plan. We have had occasion to construe the same provisions (including the remainder of article 4) as applied to similar facts in other cases and have held that the contract did not thereby contemplate that a new plan might be required for the foundations of the building, and that, as said in Rust Engineering Co. v. United States, 86 C. Cls. 461, and Sobel v. United States, 88 C. Cls. 149, such a change was “clearly not within the contemplation of either party to the contract at the time it was made.” We think this holding is based on good and sufficient reasons and reaffirm it. It should be noted in this connection that article 3 specifically provides that the changes must be “within the general scope” of the contract. Manifestly the provision refers to details shown by the drawings and specifications, which did not show soil conditions.
It is true the word “specifications” is sometimes used in a broad sense with reference to anything required by the contract, but here we think it referred to some detail which *568 could be changed without essentially altering the structure which was to be erected.
In the case before us a fundamental change was made in the plan of the building by requiring an entirely new kind of a foundation. The resulting structure was as different from that required by the contract as it would have been if the walls had been required to be built of other materials upon entirely different plans. If the construction contended for by the defendant should be followed there would be little use for anything in the contract except to provide that a building should be erected. Changes could be made not only in details, but in the general plan of the structure to be erected, the cost to be adjusted later, and no allowance would be made for the damages caused by the change. If we should now agree to this contention we would in effect overrule not only the Rust and Sobel cases, supra, but also a number of others, among which we might cite General Contracting and Construction Co., Inc., v. United States, 84 C. Cls. 570, wherein it was held that a similar provision referred “entirely to structural changes like the substitution of one kind of material for another, changes in architectural design, the addition to or subtraction from work required by the specifications, etc.”
In Freund v. United States, 260 U. S. 60, 62, the Supreme Court made a statement which we think is peculiarly applicable to the case at bar:
It is, of course, wise and necessary that government agents in binding their principal in contracts for construction or service should make provision for alterations in the plans, or changes in the service, within the four corners of the contract, and thus avoid the presentation of unreasonable claims for extras. This court has recognized that necessity and enforced various provisions to which it has given rise. But sometimes such contract provisions have been interpreted and enforced by executive officials as if they enabled those officers to remold the contract at will. The temptation of the bureau to adopt such clauses arises out of the fact that they avoid the necessity of labor, foresight and care in definitely drafting the contract, and reserve power in the bureau.
*569 The Supreme Court pointed out that this course does not make for justice (to the contractor) and instead of saving money for the Government, results in increased expenditures because it increases the prices which the contractors would be obliged to make in their bids for Government contracts. The court further held, in effect, that the application of “enlarging provisions” should be limited to what was fairly and reasonably within the contemplation of the parties when the contract was entered into.
That the faulty and insufficient foundation plans originally furnished by the Government caused the delay of which the plaintiff complains is not disputed. There was an implied warranty that these plans were sufficient. Wharton Green & Co., Inc. v. United States, 86 C. Cls. 100; United States v. Spearin, 248 U. S. 132, and Hollerbach v. United States, 233 U. S. 165, 171, 172. The original contract having thus been breached, we have so often held that the defendant is liable for the damages thereby caused to plaintiff that a citation of authorities on this point is not necessary.
The defendant, however, argues that as the plaintiff made a contract with the defendant to perform the additional work, the price agreed to be paid covered all the damages that plaintiff sustained through loss of time. The defendant ordered the work discontinued and asked for a bid on new work in accordance with new specifications. It is clear that when plaintiff made a bid stating a price for doing the new work it did not thereby agree to waive its claims for damages by reason of breach of the original contract. As in Rust Engineering Co. v. United States, supra, the proposal and bid included nothing for the additional costs resulting from the delay which had been caused by the defendant. The acceptance of the bid completed a new contract for doing certain new work in the place of that originally agreed to. It is said that the new contract was a modification of the former contract. Necessarily this is so but we have shown that the original contract did not apply to the situation.
In support of its contention that the price agreed upon covered the new work counsel for defendant cite so large a *570 number of cases that it would be impracticable to review them all, but reliance seems to be placed largely on the cases of Levering & Garrigues Co. v. United States, 73 C. Cls. 508, and Plack et al. v. United States, 66 C. Cls. 641. The first of these two cases is one in which the court held that the changes were made pursuant to the original contract. Here we hold that they were not and consequently this case is not applicable. In a case which has the same title (73 C. Cls. 566),. the court' held that the Government was liable for extra costs due to delays occasioned by it.
The other case, Plack v. United States, supra, which seems to be specially relied upon by defendant, was altogether different from the one now before the court. In that case both parties were seeking to recover damages. The defendant claimed liquidated damages for delay by plaintiff in the completion of the original contract, which damages were not allowed, but the plaintiff asked no damages on the original contract. The Plaek case was one in which the damages claimed by plaintiff were alleged to have been caused by delay in completion of the new work required by the change and the court held that the price agreed upon for the new work covered the time which it required. In the instant case there is no claim made by plaintiff that delay was caused by the defendant in the completion of the new work but the plaintiff asks for damages for delay caused by defendant in the completion of the original contract. It will be seen that not only the circumstances of the Plaek case but the issues and applicable principles of law were altogether different from those involved in the case at bar.
An examination of the other cases cited on behalf of defendant will show, like the last two cases which we have considered above, that they have no application to the issues which we now have before us.
The motion for a new trial must be overruled. It is so ordered.
Littleton, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.