LittuetoN, Judge,
delivered the opinion of the court :
The primary questions involved in plaintiff’s claims for damages for delay, extra costs, and unpaid portions of the contract prices under the four contracts in this case are essentially questions of fact. The principles of law applicable to the facts as established by the record are fairly well settled. The voluminous record which details all the facts and circumstances concerning the performance by both parties of the wort required of them under the three contracts, extending from Evansville, Indiana, to Atlanta, Georgia, and the contract on the Indianapolis-Chicago section of the Cincinnati-Chicago Airway, has been carefully studied and considered, and the essential evidentiary and ultimate facts as established by the whole record and necessary to disposition of plaintiff’s claims are set forth in the findings. Upon those facts and under the applicable principles of law, the plaintiff is entitled to recover the excess labor costs and expenses, unpaid amounts due under the contracts, and the amounts withheld by the defendant as liquidated damages for delay under three of the contracts. McCloskey v. United States, 66 C. Cls. 105, 128; The Snare & Triest Co. v. United States, 43 C. Cls. 364, 367; Harry D. Carroll and Louis D. Carroll, Trading as Carroll Electric Co. v. United States, 76 C. Cls. 103, 116-119; United States v. Smith, 94 U. S. 214, 217, 218; Hollerbach v. United States, 233 U. S. 165, 171; Virginia Engineering Co., Inc. v. United States, 89 C. Cls. 457, 466; H. E. Crook Co. v. United States, 59 C. Cls. 348-350.
Under the three contracts between Evansville, Ind., and Atlanta, Ga., the plaintiff agreed to perform work at thirty-nine separate sites about 10 miles apart by airline, but the traveling •distance from site to site was on an average far greater than 10 miles, and in some instances the actual necessary traveling distance between sites was from 40 to 50 miles. At every third *627 site there was to be an intermédiate or emergency landing field for airplanes and at each of the landing field sites considerable clearing and grading, which the defendant was ■obligated to perform, was necessary before plaintiff could perform much of his work. In addition the defendant was required to stake out at each of the sites the locations and lines of work to be performed by plaintiff. The contract also required that the work to be performed by plaintiff should be performed in the presence of and under the direction and .supervision of an authorized representative of the defendant. The defendant was also obligated to furnish the plaintiff •drawings showing the exact location and arrangement of the landing field boundary lighting system to be installed at the various sites, as set forth in the specifications. The defendant was to furnish certain equipment to be erected and installed by plaintiff, and plaintiff was to furnish and install certain material and equipment.
In order for plaintiff properly and orderly to perform the work.called for by the contracts, it was necessary that the work to be done and the information to be furnished by defendant be performed and supplied before plaintiff could perform the work required of him in a systematic and efficient manner, and without unreasonable delay.
The defendant gave plaintiff notice to proceed under the three contracts between Evansville and Atlanta, thereby starting the running of the contract time, before it had commenced performance of the work required of it at the various sites and before it had prepared and furnished plaintiff with the necessary drawings for the lighting system. By reason of this, plaintiff was unable properly to order his boundary lighting cable to meet the requirements of the drawings to be furnished and was unable to perform much of the most important work at a large number of the sites. The work to be performed by plaintiff at the intermediate or emergency landing fields constituted by far the major portion of all the work called for by the contracts. From the standpoint of good engineering, practical operation, and expenses, it was necessary for the work to be commenced at one end of the territory covered by the contracts and proceeded with in an •orderly manner toward the other end.
*628 The contract covering the section from Evansville to Nashville was first executed; that covering the section from Nashville to Chattanooga was next executed; and the third contract covering the section from Chattanooga to Atlanta was the last one executed on the Atlanta-Chicago Airway. In making his bids, plaintiff planned his operations so as to begin, near Evansville, proceeding south, and the defendant was so notified, and no objection thereto was interposed. Plaintiff' pursued this plan of operation so far as it was practicable for him to do so in view of the conditions encountered as a result of the failure of the defendant within a reasonable time to perform the work and furnish the information required of it.
The work called for by each of these three contracts fell into four major classifications. These classifications were (1) excavation for and placing of tower footers in concrete as specified, pouring of concrete directional arrow, and pouring foundation for powerhouse sheds; (2) the building and painting of the powerhouse sheds; (3) fabrication and erection of towers; placing of course lights, beacon lights and electrical equipment and setting of engine generator sets;- and (4) the wiring of towers and installation of boundary and obstruction lighting systems for the landing fields. In making his bid and in planning his operations, the plaintiff,, as he had a right to do, organized and planned the work in such manner as to maintain an orderly sequence of operation from site to site. His working and supervisory force consisted of separate crews of mechanics and foremen, with one crew for each of the four classifications of work required.. Each crew of men worked independently and was to progress from site to site as it performed its phase of the work at each site, and each crew was scheduled to arrive at the several sites after the crews on advance operations had completed their portion of the work. This plan of operation avoided overlapping of effort, loss of time in performing the work-at each site and in traveling from site to site. Had plaintiff been permitted by defendant to pursue this plan of operation within reasonable limits, he would have finished the work before encountering adverse weather conditions. The plan was also of advantage to the defendant for the reason that *629 it held to a minimum the expense of performing the work which it desired to have done. Any other plan of operation would have been more expensive and would have required a longer period of time. It was necessary in estimating for the cost of the work that some orderly plan of operation be used; otherwise, it would have been impossible accurately or fairly to estimate the probable cost of performing the work, -or the time within which the work could reasonably be performed.
There was no reason whatever for defendant’s failure to perform the work required of it under the contracts or to furnish the plaintiff with the necessary drawings, or its failure to stake out the lines and locations at the sites before the plaintiff was ordered to proceed with the work, or within a reasonable time thereafter. The final survey had been made. The defendant had the right to make changes in the plans and specifications and did so in some instances, but it compensated plaintiff only for the cost of the new work involved in the change and gave no consideration to the increased expenses under the contract resulting from written orders stopping the work over long periods of time. The true intent and meaning of the contract and specifications, upon the basis of which plaintiff prepared and submitted his bid as to the cost of work and time of performance, was that the sites would be ready for the performance of the work required of plaintiff when he was ordered to proceed, or, that the work to be performed thereat and the information to be furnished by the defendant would be performed and furnished within a reasonable time so that plaintiff would ndt be unreasonably delayed and put to unnecessary expense. The proof shows that the defendant failed to fulfill its obligations under the contracts in a reasonably prompt manner. The proof further shows that performance by plaintiff was delayed by the defendant over unreasonably long periods of time.
The proof shows that practically all the unreasonable delay caused by the defendant was due to its failure to clear and grade the sites, to written orders of the contracting officer stopping all work at various sites, particularly at the landing ■fields, for long periods, and failure of the contracting officer *630 to furnish the drawings for the installation of the lighting systems within a reasonable time; and to delay in supplying such information for long periods after plaintiff had made numerous written requests therefor.
The plaintiff could not order shipment of the necessary boundary lighting cable until the defendant had furnished the necessary drawings for the lighting system. Plaintiff so notified the contracting officer. The specifications prohibited splicing of the cable. In each instance the contracting officer promised to furnish promptly the drawings for the lighting system but failed to do so, thus unreasonably delaying the plaintiff.
On the Nashville-Chattanooga section, the defendant also delayed the plaintiff by failing to have the inspector on the work so that plaintiff could promptly proceed therewith.
Counsel for the defendant contends that the defendant did not unreasonably delay plaintiff so as to cause him increased and unnecessary expenses under the contracts, for the reason that failure of the defendant to perform the work and to furnish the information required of it did not prevent plaintiff from moving to other sites and there performing work called for by the contract. That is exactly what the plaintiff endeavored to do in order to keep the work going on as best he could. But that is the reason why the costs and expenses of plaintiff were greatly and unreasonably increased over the contract price and over the cost at which the work could and would otherwise have been performed.
In passing upon the matters of delay and extensions of time after the contracts had been completed and the work accepted, the contracting officer, while recognizing that the failure of the defendant in many of the particulars herein-before mentioned operated to delay plaintiff and increase his costs, did not relieve the plaintiff of these delays in the recommendations made by him for the assessment of liquidated damages. Failure to do so was gross error.
In Ripley v. United States, 223 U. S. 695, 701, which involved a Government contract reposing judgment in an agent of the United States, the court held that “But the very extent of the power and the conclusive character of his decision raised a corresponding duty that the agent’s judgment should *631 be exercised — not capriciously or fraudulently, but reasonably and with due regard to the rights of both the contracting parties.” The record as a whole shows and we have found as a fact that the recommendations of the contracting officer’s authorized representative which were approved by the contracting officer, on the basis of which liquidated damages were assessed and withheld by the Comptroller General from plaintiff from amounts otherwise due under the contracts, were arbitrary and grossly erroneous.
Counsel for defendant also contends that plaintiff did not employ qualified laborers and that his mechanics and foremen were unskilled and inefficient. The record affords no foundation or justification for this contention. On the contrary, the far greater weight of evidence shows that plaintiff’s laborers were well qualified for the work which they were called upon to perform; that his mechanics Were highly skilled and efficient, and that his foremen were qualified, capable, and efficient.
The evidence shows that, except for the unreasonable delays caused by the defendant, plaintiff would have completed the work called for by each of these three contracts within the time therein specified. The proof further establishes that the increased costs and expenses in the amounts set forth in the findings fairly and accurately represent the expense of performing the work called for by the contracts in excess of the cost at which the work could and would have been performed by plaintiff except for acts, orders, and delays of the defendant for which the plaintiff was not responsible.
Counsel for defendant contends that if plaintiff sustained some excess costs by reason of the acts of the defendant plaintiff is not entitled to recover because each item making up the total excess cost is not proved with absolute accuracy. The fact of responsibility for the excess costs is clearly established. The fact that plaintiff sustained damages is-also clearly established. The amount of damages actually sustained by plaintiff under each of the three contracts is sufficiently proved. Eastman Kodak Co. of New York v. Southern Photo Materials Co., 273 U. S. 359, 379; Electric Boat Co. v. United States, 66 C. Cls. 333, 375, 376; Bradley v. United States, 66 C. Cls. 551, 556; Goltra et al., Executors, v. *632 United States, 91 C. Cls. 42; Chippewa Indians of Minnesota v. United States, 91 C. Cls. 97.
It is also urged by counsel for the defendant that plaintiff cannot recover the amounts withheld as liquidated damages under the three contracts because it was held in the administrative reports that in some instances the plaintiff did not write the contracting officer or his authorized representative making a request for an extension of time within ten days after the orders and acts of the contracting officer which operated to delay plaintiff in the prosecution of the work. It is also argued that plaintiff did not appeal from the recommendations set forth in the administrative reports.
The record as a whole shows that the contracting officer had proper written notice or personal knowledge of the acts, or failure of defendant to act, which operated to delay plaintiff in the completion of the work and unreasonably increased his costs of performance. If the contracting officer had ended these delays when notice thereof was had, there would have been no delays upon which a claim for liquidated damages could have been based. We doubt whether under the last proviso of the liquidated damage clause, Art. 9 of the contracts, relating to written notice by the contractor of causes of delay, the contractor was required to give the contracting officer notice in writing that he had not furnished the information which he was required to furnish, or that he should commence and complete the work which he was required to perform under the contract, in order that the contractor’s work might be commenced and carried on in an orderly manner as contemplated by the contract and without, undue delay. The contracting officer had no more right under the contract to assume that his failure to prepare the sites, furnish the drawings and permit the work of plaintiff to proceed without stop orders would not delay plaintiff than plaintiff had to assume that the contracting officer would be conscious of his failure to act and not claim damages because of his failure to do so. Wright v. King, (Texas) 17 S. W. (2) 98, 102; Hansen, Hammond & Clist v. Broadway Bank, (Oregon) 263 Pa. 913, 914. In any event the record shows that plaintiff did properly notify the contracting officer with reference to these matters in every instance as soon as it be *633 came apparent that there would be delay on account thereof. The contracting officer did not take proper action to avoid the unreasonable delay which thereafter occurred.
The proviso in Art. 9 of the contract that the contractor should give the contracting officer written notice of the causes of delay within ten days from the beginning thereof had reference, we think, to matters which would result in delay in prosecution of the work of which the contracting officer did not and probably would not otherwise have knowledge, such as the rulings, instructions, and requirements of inspectors or constructing engineers of the defendant. But the principal unreasonable delays, which we find to have existed under these contracts, were due to causes of which the contracting officer through his authorized representative, the chief engineer of the Bureau of Lighthouses, had actual knowledge at all time as well as written notice within a reasonable time. It would be an unreasonable interpretation of Art. 9 to hold that after the contracting officer had ordered plaintiff to proceed the contractor should be charged with heavy damages if he did not notify the contracting officer in writing to fulfill his specific promises and comply with his known obligations under the contracts. It seems clear that the proviso with reference to written notice by the contractor within ten days did not apply and was not intended to apply where the contracting officer by a written order to plaintiff stopped all work at various sites over long periods of time. Even in those cases plaintiff did, within a reasonable time, request the contracting officer by telegram and letter to release the written orders of suspension so that the work could proceed, but the suspension orders were nevertheless continued because the contracting officer had not performed his work or because he could not come to a conclusion as to what changes he wanted to make. In a number of instances the work at various sites was stopped over long periods and finally released without any changes being made. There was no provision in the contracts requiring plaintiff to make a request for specific extensions of time. However, plaintiff did make specific requests for extensions of time, due to delays caused by the defendant, before the work under the contracts was completed and before the contracting officer gave considera *634 tion to the matter of extensions of time after completion of the work.
The defendant having unreasonably delayed plaintiff, the liquidated damage clauses of the contracts were thereby waived. United States v. United Engineering & Contracting Co., 234 U. S. 236, 242; Ittner v. United States, 43 C. Cls. 336, 351; Greeley Iron Works v. United States, 66 C. Cls. 328, 333; Griffiths v. United States, 77 C. Cls. 542, 550, 551; Wharton Green & Company, Inc. v. United States, 86 C. Cls. 100.
No appeal by the contractor to the head of the department under these contracts was necessary. The head of the department was the contracting officer. Plaintiff was not required to take any appeal from the recommendations prepared by a clerk in the Bureau of Lighthouses for consideration by the Comptroller General. The reports and recommendations prepared by the clerk were approved by the chief engineer as the representative of the contracting officer, and also by the contracting officer, but neither the chief engineer nor the contracting officer gave any independent study and consideration to the detail facts disclosed by the record. The contracting officer was entitled under Art. 18 (b) to have one authorized representative to act for him, but this representative was not authorized to pass the job of acting for the contracting officer on to a clerk. Moreover, the contracting officer or his authorized representative was required to exercise independent judgment rather than making recommendations for approval or disapproval by the Comptroller General. Sun Shipbuilding & Dry Dock Co. v. United States, 76 C. Cls. 154, 190, 191; Phoenix Bridge Co. v. United States, 85 C. Cls. 603, 626.
Under the three contracts covering the work between Evansville, Ind., and Atlanta, Ga., plaintiff is entitled to recover (1) the excess performance costs incurred by reason of delays caused by the defendant, (2) the additional amounts due under the contracts for obstruction lighting cable furnished and installed, and (3) the total amount of liquidated damages erroneously withheld. The totals of these items are $13,-622.00 under the Evansville-Nashville contract, $10,396.27 under the Nashville-Chattanooga contract, and $7,926.45 under the Chattanooga-Atlanta contract.
*635 Plaintiff also claims a profit of 10 percent on the excess labor and overhead costs, truck, travel, and insurance expenses totaling $12,067.06, $9,706.07, and $5,284.53, respectively. Profit in addition to actual damages is not allowable. The contract price which plaintiff will receive included a profit of 10 percent. In McCloskey v. United States, 66 C. Cls. 105, 129, this court held: “* * * but the plaintiff will not be allowed anything for profit which it might have made as that sum was included in the contract price which, under the judgment to be rendered herein, it will receive together with the damages caused by delay.” See also, Rust Engineering Co. v. United States, 86 C. Cls. 461, 475.

Indianapolis-Ghicago Contract

The facts with reference to the claim made by plaintiff under this contract are set forth in findings 13-20. These 'findings show that in performance of the work called for by this contract the plaintiff incurred and paid actual costs of $5,042.92 for labor and superintendence costs, and for truck, travel, insurance, and overhead expense. These costs were in excess of the contract price and also in excess of the cost at which the work called for could and would have been performed by plaintiff had it not been for the delay caused by the defendant which made it necessary for plaintiff to perform the work in severe winter weather and under conditions materially differing from those contemplated by the contract and indicated in the drawings and specifications in connection with the excavation for and the placing of foundations for the towers. McCloskey v. United States, supra; Steel Products Engineering Co. v. United States, 71 C. Cls. 457, 470, 471; Donnell-Zane Co. v. United States, 75 C. Cls. 368, 374; Owen v. United States, 44 C. Cls. 440; Plato v. United States, 86 C. Cls. 665, 675; Sobel v. United States, 88 C. Cls. 149, 165, 166.
The facts further show that plaintiff was not paid the contract price of $149 for placing lighting cable in galvanized steel pipes at Sites 13,19, and 22-B in accordance with paragraph 18 (d) of the specifications, and also $18.40, representing the actual cost ®f uncovering and re-covering this pipe *636 by direction of the contracting officer in order to prove that the pipe had been laid.
No liquidated damages are involved in the claim made under this contract. In the final payment made after the work had been completed and accepted, the contracting officer-held plaintiff liable for and deducted $3,885 as liquidated damages for delay in completing the work within the period of 60 days specified in the contract, but upon plaintiff’s protest the entire amount withheld was refunded.
At- the time this contract was executed by plaintiff on November 20, 1928, and by the defendant on or about December 1, 1928, plaintiff was ready to proceed with the-work and to complete the same within the period agreed upon. Defendant gave plaintiff notice to proceed on December 7, but it did not furnish plaintiff with the towers until January 2,1929. Plaintiff could not proceed with installation of the foundations for the towers for the reason the tower footers had to be placed in the concrete foundations at the depths and in accordance with the other dimensions specifically indicated and set forth on the drawings and in the specifications. Had the defendant not delayed furnishing the towers, all the concrete foundation work could and would have been completed by plaintiff during the period of good weather between December 7,1928, and shortly after January 2, 1929. This delay of the defendant made it necessary for plaintiff to perform the work under adverse working conditions, due to severe winter weather, at much greater expense than that at which the work could otherwise have been performed. Plato v. United States, supra; Owen v. United States, supra. In adition to this, it was discovered by the defendant that due to unforeseen and unanticipated subsurface and latent conditions the foundations for thirteen towers constructed in the maimer called for by the drawings and specifications would not properly and satisfactorily support the towers.
The findings set forth the work which plaintiff performed at the direction of the contracting officer’s inspector, subsequently approved by the contracting officer, in order to meet and overcome the conditions encountered. The conditions encountered, as set forth in the findings, fell within the *637 provisions of Art. 4 of the contract, but the contracting officer erroneously interpreted that article by holding that the contractor was responsible for all the expense of overcoming the conditions, because the invitation for bids advised the bidders that they “must make their own estimate of the facilities and difficulties attending the execution of the proposed contract, including local conditions, and all other contingencies.” But paragraph 13 of the “Directions for Preparation of Contract,” which also accompanied the proposed contract, specifications, and drawings, provided that “The Invitation, Bid, Acceptance, and Instructions to Bidders are not to be incorporated in the Contract.”
The statement in the invitation for bids must be read in connection with Art. 4 of the contract and, when so read, it is clear that it did not apply and was not intended to apply to unqualified representations contained in the drawings and specifications upon which plaintiff had a right to rely. The plaintiff had a right to assume, when making his bid, that the foundations and towers constructed and erected, as definitely shown and specified by the defendant in the drawings and specifications, would properly stand. Paragraph 2 of the invitation for bids did not require plaintiff to investigate and determine for himself whether or not defendant’s engineering conclusions were correct. Article 4 of the contract took care of such contingencies, and that was the whole purpose of having that article in the contract. In effect, the defendant by article 4 of the contract said to plaintiff “If you excavate for tower foundations according to the dimensions I have shown and specified, and if you construct the tower foundations in accordance with the dimensions and of the materials shown and specified, I will make an equitable adjustment so as to increase your contract price if it should become necessary, by reason of conditions encountered, to make the excavations or construct the foundations in a different and more expensive manner.” If the statement in the invitation for bids controlled in every circumstance, article 4 of the contract would be meaningless.
There can be no dispute under the proof as to plaintiff’s extra costs in connection with the foundations. The facts found by the contracting officer were in accordance with the *638 conditions which his authorized inspector found to exist. But counsel for defendant argues that plaintiff cannot recover these extra costs because plaintiff did not call the conditions to the personal attention of the contracting officer and obtain a written order from him before doing the work. Articles 4 and 3 of the contract, prepared by the defendant, were intended principally for its benefit in obtaining low bids. One of the purposes of article 4 was to relieve bidders of the necessity of having to increase their bid prices so as to take care of all possible unknown and unforeseen conditions and contingencies that might arise in connection with furnishing defendant a perfect job at their own expense. These articles must be interpreted and applied in the light of the facts and circumstances as shown by the record in each case. They should not be arbitrarily interpreted and applied in favor of defendant, so as to relieve it of an expense contemplated by article 4. The contracting officer found that the extra work done was necessary, and approved and affirmed the findings and orders of the inspector. It is true that this was after plaintiff had performed the necessary work ordered by the inspector, but we see no reason why the contracting officer could not effectively ratify what had been ordered and we think he did. Crozier v. Krupp, 224 U. S. 290; Shoshone Tribe of Indians v. United States, 299 U. S. 476, 496. A slight departure as a mere matter of form or procedure rather than substance is not fatal to plaintiff’s rights or to the contracting officer’s authority. The work performed was necessary, it was satisfactorily performed at the cost found, and defendant received the benefit thereof. The particular cost was not within the contract price and under the'terms of the contract, drawings, and specifications, was not intended by either party that it should be. Suburban Contracting Co. v. United States, 76 C. Cls. 533, 545; Sobel v. United States, 88 C. Cls. 149, 161, 162, 168, 169.
In addition to what has been said with reference to the extra foundation work, it should be noted that in this case ten of the towers had been completely erected and approved, and the difficulty was discovered by the defendant rather than by the contractor. When excavation was subsequently *639 under way for the foundations of the remaining three towers, plaintiff discovered similar conditions, stopped work, and called the attention of the defendant’s inspector to the same. Plaintiff was under no greater duty than was defendant’s inspector to call the matter to the personal attention of the contracting officer. Article 4 does not state that only the contractor shall call the attention of the contracting officer to the conditions. Article 6 provided that the work should be performed under the supervision of Government inspectors. Paragraph 20 of the general specifications provided that “No concrete shall be placed except in the presence of a duly authorized inspector of the Bureau of Lighthouses.” Plaintiff strictly complied with this provision.
Plaintiff is entitled to recover as damages the excess performance costs directly attributable to the delay caused by the defendant and to the changed conditions encountered. Levering & Garrigues Co. v. United States, 73 C. Cls. 508, 556, 577; Owen et al. v. United States, supra; Plato v. United States, supra; Rust Engineering Co. v. United States, supra; Sobel v. United States, supra. Plaintiff is also entitled to recover under the contract $167.40 for the galvanized steel pipe placed as ordered by the defendant under paragraph 18 (d) of the specifications.
Judgment will be entered in favor of plaintiff under this contract for $5,210.32. Plaintiff’s claim for a profit of ten percent on the excess costs of $5,042.92 under this contract is denied for the reasons hereinbefore given.
With reference to defendant’s counterclaim for $19,585, the record shows that plaintiff did not require nor permit any laborers or mechanics doing any part of the work contemplated by any of the four contracts with the defendant to work more than eight hours in any one calendar day upon such work at the site thereof. Plaintiff paid many of his laborers and mechanics for more than eight hours on many days during the performance of these contracts, but the number of hours in excess of eight, for which wages were paid, were not hours spent by such laborers and mechanics upon work under the contracts or at the sites thereof. The excess hours for which wages were paid represented the time *640 necessary to travel to and from the site of the work. Clearly this was not in violation of Art. 11 of the contract.
The defendant has apparently abandoned the counterclaim, inasmuch as no reference is made to it in the brief.
Judgment will be entered in favor of plaintiff for $37,-155.04. It is so ordered.
MaddeN, Judge; Jones, Judge; Geeen, Judge; and Whaley, Chief Justice, concur.