Madden, Judge,
delivered the opinion of the Court: •
On February 9,1940, plaintiff entered into a contract with the defendant to install a large turbo-alternator, condenser, and auxiliary equipment at the Norfolk Navy Yard, Portsmouth, Virginia, for $22,640. The machines to be installed *549 were, according to plaintiff's contract, to be furnished by the Government “under other contracts.” They were in fact bought from a manufacturer, but whether they were made to order or ready made by that manufacturer, we do not know.
As shown in our findings of fact, plaintiff was notified on March 6, 1940, to proceed with the work. That fixed the completion date at July 14. Plaintiff went to Norfolk and made plans for his work. He was told that the turbo-alternator was scheduled for delivery April 15. He started his work a week before that date so as to be ready to install that machine when it arrived. On May 4 plaintiff advised the defendant’s representative that he had been ready for some time for the turbo-alternator and that if by reason of late delivery he could not complete the work he would need an extension of time. May 14 the defendant’s representative advised plaintiff that the Bureau of Yards and Docks “had authorized rewinding” of the machine and suggested that plaintiff stop work on the contract until the machine arrived. Plaintiff was, however, assured from time to time that the machine was expected to arrive “almost any day” and he remained on the job until about June 1, and thereafter left his piping superintendent, Spindel, on the job to care for plaintiff’s equipment, and for the preparatory work which had already been done.
The turbo-alternator arrived on July 8. Plaintiff then sent a Mr. Kelvin who superintended the installation of the turbo-alternator, while Spindel had charge- of the piping work. The job was completed by August 10. Plaintiff claims that ten weeks of Spindel’s time was wasted, and that Kelvin’s five weeks on the job would have been unnecessary had it not been for the delay, as plaintiff would, himself, have installed the machine while he was there in April and May.
The defendant offers no explanation for the delay. There is the statement in Commander Fogg’s notice to plaintiff of May 14 that the Bureau “had authorized the rewinding” of the turbo-alternator. Whether this was because it was defectively manufactured, whether the manufacturer thereby became liable to the Government for the damages caused by the delay in delivering it, or whether, on the other *550 band, the Government had changed its mind about how it wanted the machine wound, and had reserved, in its contract with the manufacturer the privilege, with or without penalty, to so change its mind, we do not know. We do not know whether the machine was manufactured on specifications written by the Government, which were so badly written that the product would have been unusable and therefore had to be rewound.
The Government, by providing in the contract that plaintiff’s time of performance should run from five days after plaintiff was given notice to proceed, probably did reserve to itself considerable leeway as to when it should give that notice and when, therefore, plaintiff could count on beginning his work. But the notice to proceed was given on March 6, 1940, and the time for the beginning of plaintiff’s performance was then definitely fixed. The evidence does not show what reason Commander Fogg, who gave the notice to proceed, had for believing that the machine would be available for installation shortly after the time set in the notice. If he did not take the trouble to ascertain the latest news on that question, he was not considerate of the useless expense that plaintiff might be put to if the machine should not be available.
Our question is whether the Government, in effect, promised plaintiff that when it gave him notice to proceed, the machines which he was to install would be available so that he could proceed with reasonable economy to the performance of his contract, unless some circumstance arose without the Government’s fault which prevented the machines from being available. We think that would be the meaning of such a contract between parties, .neither of which was' a government, and we do not think that the obligations of the Government are different, except as they are made different by the terms of the contract. Here the Government, as we have said, offers no explanation of the delay which damaged plaintiff. We think, therefore, that unless by some provision of the contract it reserved to itself the privilege of delaying plaintiff to his damage, it breached its contract by doing so.
*551 The "Government seems to claim some right under Article 13 of the contract. That article is as follows:
Article 13. Other contracts. — The Government may-award other contracts for additional work, and the contractor shall fully cooperate with such other contractors and carefully fit his own work to that provided under other contracts as may be directed by the contracting officer. The contractor shall not commit or permit any act which will interfere with the performance of work by any other contractor.
We do not think that that Article has anything to do with the instant case. It ivas in the contract because it is printed in the standard form of Government contract, and it is in that form because it is frequently applicable to the facts of Government contract situations, as where one contract is let for the construction of a building and another for the installation of plumbing and heating facilities, or the grading of the ground or the making of roads. Here no “other contracts for additional work” were let, with which plaintiff could cooperate, or with the performance of which he might interfere. We do not think that the fact that the Government was buying from a manufacturer, either ready made or made to order, the machine which plaintiff contracted to install, meant that plaintiff must accommodate himself to the performance of the seller of the machine by waiting around indefinitely for it to be delivered.
Article 13, like all the language of plaintiff’s contract, was written by the Government, and if it was intended to have the meaning the Government seeks to give it, that meaning could easily have been put into words.
Article 3 of the contract, relating to changes, seems to us to have no application to our problem. No change in what plaintiff was to do under his contract was ordered. He was delayed because the machine which he had contracted to install was not furnished for installation for some months after the time when the Government, by necessary implication, agreed to furnish it.
We do not read the case of United States v. Rice, et al., 317 *552 U. S. 61, decided November 9, 1942, as meaning that the Government can, without any privilege reserved in the contract and without any consideration whatever for the damage caused to the contractor, delay the performance of the contract as much as it pleases, and pay the bill for the damage merely by refraining from assessing liquidated damages against the contractor for his late completion. If the Government should expressly reserve such an unreasonable privilege in its contracts it would pay heavily for the privilege in the increased amounts of bids which prudent contractors would submit. We see no reason why the Government should want such a privilege, or should be willing to pay for it. And we see no reason why it should get such a privilege without reserving it or paying for it, as we think it did not do in this case.
In the Rice case, supra, because of unforeseen soil conditions, it was impossible to build the building into which the plumbing contractor, the plaintiff in that case, was to install his plumbing, and the building had to Be redesigned and relocated with consequent delay. There was nothing inconsiderate or unreasonable about the Government’s conduct in that case, which contributed to the delay, or which would have amounted to a breach of contract even as between ordinary persons.
The item of $39.10, which is included in the judgment, was for the repair of some defective pipes furnished by the Government. The work was necessary, and the Government concedes the validity of the claim and makes no defense under Article 5 of the contract, relating to the formalities to be observed in the ordering of extra work.
Plaintiff may recover $1,753.81.
It is so ordered.
Jones, Judge; Whitaker, Judge; and Littleton, Judge, concur.