Jones, Judge,
delivered the opinion of the court.
This suit arises out of the construction of a Post Office building in Washington, D. C. By contract dated April 23, 1932, the plaintiff, a corporation with its principal office in Chicago, Illinois, undertook to build an extension to and greatly enlarge the Post Office building near the Union Station. The contract price was $2,999,000.
The old building had wings, three stories high, on the east and the west sides. The wings were connected by a low center covered by a corrugated roofing. On the north side of the building was a loading platform with metal covering. The old building, which was constructed in 1912, had a basement. The north side of the block was vacant except for a *640 garage which was to be tom down. Here the new building was to be constructed, a three-story affair with basement and subbasement. It was to be connected with and made a part of the old building, which was to be entirely remodeled.
The notice to proceed was received by plaintiff on June 22, 1932. The completion date was to be June 12,1934, a period of 720 days. During the progress of the work plaintiff was granted extensions of time totaling 362 days, of which 267' days were because of change orders, and 95 days because of strikes, bad weather, and defaulting subcontractors. The work was completed within the contract time as thus extended.
The old building had become badly congested due to the growth of the Post Office activities at Washington.
The specifications clearly provided that the work should be done in such a way as not to interrupt the Government’s business, and stipulated that there should be no unreasonable delay or interference in the operations of the Post Office. The contractor was to provide satisfactory temporary facilities to permit such business to be continued during the operations under the contract.
At a conference representatives of the Post Office told the plaintiff it would not be possible to surrender many spaces in the old building and suggested that plaintiff go forward with the construction of the new building so that some of the postal employees could be moved into the new building, which they claimed would permit the remodeling of the old building without interrupting the business of the Post Office. However, plaintiff felt that the only practicable way was to construct the new building and remodel the old at the same time, due to the fact that they were to be joined together and finally finished as one single large building with uniform construction, design, and appearance. It therefore submitted to defendant a schedule showing numerous spaces in the old building that it desired defendant to surrender, the times at which it desired such surrender and the length of time the spaces would be needed.
It was impossible for defendant to surrender a good many of the spaces set out in the schedules without interrupting the business of the post office. In August 1932 plaintiff, at *641 the suggestion of defendant, constructed as a temporary facility a mezzanine floor, containing 3,200 square feet, in the first floor of the old building. This mezzanine was sufficient to take care of the post office employees working at and near to the north wall in the old building, but was not large enough to take care of the post office employees working in many other spaces in the old building designated in the schedules and possession of which was desired by the plaintiff. The mezzanine was used by the post office employees to its full capacity for two or three months, but by the end of the year its use had dwindled to half capacity, and at the end of 18 months only 20 persons out of a capacity of about 75 were using it. It was not practicable to use the mezzanine for some phases of the work. It could not be used by any unit or postal employees who had to deal with the public. It was not practicable to use it for distribution of the mail' It did enable the defendant to surrender a few of the spaces which plaintiff desired, and defendant surrendered them.
By far the greater part of plaintiff’s claim is for damages alleged to have resulted from the failure of the defendant to surrender spaces in the old building so that plaintiff could proceed promptly and efficiently with the performance of the work required by the contract.
However, in the light of the inability of the defendant to surrender many of the spaces in the old building which plaintiff desired without seriously interrupting the business of the Post Office, the evidence to support many of these claims is not satisfactory.
The evidence shows that the Post Office at Washington was one of the busiest and most congested of the post offices in the country, a fact that plaintiff knew at the time it entered into the contract.
Plaintiff claims total damages in the sum of $441,812.60 as a result of alleged long and unreasonable delays upon the part of the defendant in acting upon change proposals, interpreting vague plahs and specifications and correcting errors in the drawings, plans and specifications. It is necessary to deny most of these claims since plaintiff did not pursue the remedy clearly set out in the contract.
*642 A number of errors were found in the specifications which required changes and modifications. In some instances the defendant was inexcusably slow in properly interpreting and in acting upon the necessary change proposals. These are set out in the findings and it will not be necessary to repeat them in detail.
On October 15,1932, plaintiff called defendant’s attention to errors in contract drawing P-450 relating to the subsoil drainage system below the subbasement of the new building. The system as specified would have been improperly pitched so that the water would not have been carried off. Defendant did not reply to this letter, and on December Y, 1932, plaintiff submitted a change proposal in the amount of $2,630.54. On January 20,1933, defendant requested plaintiff to submit a modified proposal with some additional changes. This plaintiff did, but the modified proposal was rejected as excessive. On March 3, 1933, plaintiff submitted another proposal, somewhat modified, which was accepted by the defendant on April 3, 1933. Because of these unreasonable delays plaintiff paid out $254.65 in actual storage charges, which it is entitled to recover. Arnold M. Diamond v. United States, 98 C. Cls., 543, 551.
One of the first things to be done in the performance of the contract was to underpin the two 60-foot sections of the north wall of the old building in the wings so that the footings for the columns of the new building could be put in at the lower depth required by the subbasement of the new building. The contract contemplated that this underpinning should be done from the inside of the basement of the old building. To do this it was necessary to tear down two 60-foot sections of the north wall and open up the columns thereof so as to connect the weight-carrying steel therein with the steel framework of the new building.
The Government’s draftsmen of the specifications overlooked the fact that the electric elevator near column 32 could not do the work of the hydraulic elevator in the north wall near column 35, and when plaintiff asked for the surrender of the hydraulic elevator and machinery thereof near the north wall and column 35 so that it could underpin the north wall in the east wing near First Street, the defendant refused to *643 surrender it. Finally it was discovered that by extending the use of the Moretrench System the soil could be dried out so that the underpinning of the north wall could be done from the outside. The new plan of underpinning was prepared, submitted and accepted. Plaintiff began the underpinning as soon as the new plan was approved by defendant and finished it March 6, 1933, about two months later than originally planned. The hydraulic elevator near column 35 was not surrendered until October 8, 1933; Since the steam headers connecting the heating system of the new building with that of the old building from which the heat for the new building had to come were to be installed in the area of the basement of the old building where was situated the machinery that operated the hydraulic elevator, the plaintiff was unable to install the steam headers until October 8,1933, much later than it had originally intended. On account of these delays caused by defendant, as more fully set out in finding 13, the plaintiff was required to keep in operation for an additional 45 days a Moretrench System for which it paid a rental of $700 per month, or a total of $1,050. Necessary operating expenses of the Moretrench System amounted to $1,944 during the 45-day period. Also because of the delay outlined in finding 13, plaintiff was put to an expense of $250 in installing a temporary heat connection to the new building. On these findings the plaintiff is entitled to reimbursement in the sum of $3,240. Nils P. Severin v. United States, 102 C. Cls., 74, 85.
While the numerous change orders and slowness of the defendant in acting on the proposed and necessary changes caused a great deal of delay in the work, much of it ran concurrently. Taking all these into consideration, however, there was a total over-all delay in the completion of the contract, due to the fault of the defendant, of at least 60 days. The errors of the defendant and its long delay in correcting them, deciding questions and acting upon change proposals delayed the final completion of the contract as indicated.
The overhead of the Washington, D. C. office of the plaintiff chargeable to the Post Office job during such delays amounted to $8,500. After eliminating certain items, the overhead of the Chicago, Illinois, office of plaintiff allocable to *644 the Post Office job on the basis of the ratio of the monthly gross of the Post Office job to the gross of all jobs being performed by plaintiff during such 60 days amounted to $5,875.
Kental value of a compressor on the job (not included in overhead) during the 60 days was $500, three adding machines $24, and four typewriters $24, making a total of $548.
Insurance expense amounted to $138 during such 60-day period. These items plaintiff is entitled to recover.
Plaintiff submitted to defendant’s architects shop drawings for the reinforcing steel rods for the slabs and foundation wall. The architects stamped on these shop drawings the following:
Approved as to size and type of material. December 16,1932.
When the rods were about to be installed defendant’s construction engineer refused to permit their installation because he thought the rods were not quite long enough to afford a sufficient bearing on the beams. Plaintiff, therefore, had to procure additional steel and splice the rods in order to obtain the length required by the construction engineer, for which plaintiff claims $2,353.52. This claim was denied by the defendant.
This is a close question. However, the specifications applying to this particular matter stipulate that the approval of shop drawings would be general and would not relieve the contractor from the responsibility for proper fitting and construction of the work nor from furnishing materials and work required by the contract which might not be indicated on the shop drawings when approved. The specifications also stipulate that all dimensions shown of existing work and all dimensions required for new work that is to connect with work now in place shall be verified by the contractor by actual measurement.
In view of these provisions of the specifications applicable to this particular claim we reluctantly conclude that plaintiff cannot recover. In addition, plaintiff failed to appeal the adverse decision to the head of the department, as required by the contract. United States v. Blair, 321 U. S. 730, 735.
*645 The same comment is applicable to the fabrication of structural steel used in the installation of vaults in the old building, as set out in finding 21. The old building had settled, and relying on the drawings plaintiff had fabricated steel which did not fit in with the old structural steel already in place. It was required to supply additional materials for which it claims $504.09. For the same reasons set out in the preceding paragraph we are unable to allow recovery on this item.
In contemplation of the post office rush during the Christmas holidays of 1933, defendant requested plaintiff to permit some of the post office employees to occupy an area on the ground floor of the new building, which of course was still under construction. Such occupation would have been impossible without heat in the area and the heating system in the new building had not been installed.
Plaintiff made an agreement with the defendant’s construction engineer and the Post Office Inspector representing the Government on the job to the effect that plaintiff would install temporary steam pipes in the area of the new building to be occupied by the Post Office employees and connect them with the steam pipes in the old building, so that the Post Office employees could occupy the area. The temporary steam pipes in the new building cost the plaintiff $1,000 for which it received no benefit. However, since this agreement was not made by a duly authorized representative of the Government we cannot allow recovery on this item.
When plaintiff cut openings in the floor over the basement of the old building it discovered that instead of only 7 plumbing pipes located in the area as shown by the contract drawings, there were actually about 20 plumbing and heating pipes, the greater number of which had to be rerouted in order to install the plumbing equipment in accordance with the contract. Plaintiff rerouted the additional pipes at a cost of $719.83 for which it made claim on the defendant. However, since the pipes in the basement were visible, and in the light of the specifications set out in Finding 23, we are unable to allow plaintiff recovery on *646 this item, though there is a measure of justice in the claim. Defendant rejected the claim and plaintiff did not appeal to the head of the department.
In doing the remodeling work plaintiff discovered that there were three partitions on the first floor, four on the second floor and five on the third floor which were not shown on the contract drawings, but which would have to be removed in order to enable plantiff to do the remodeling in accordance with the contract drawings. Plaintiff claims an expense of $1,252.23 for making these changes. In the light of specifications 173, 174 and 175 set out in finding 24, plaintiff is not entitled to recover.
Plaintiff is not entitled to recover on its claim for $1,395.37 for replacing the cafeteria floor, since the type of floor in the cafeteria was clearly visible.
The contract required the plaintiff to cut through the floor of the old building in order to make an opening 10 feet by 30 feet in area to permit the passage of conveyor belt equipment with the receptacles to carry packages from the mailing platform to the first floor. The contract drawings failed to show the presence in this area of a 10-inch steam pipe that was in the way and would have to be rerouted. They also failed to show that the structural steel surrounding the opening would have to be reframed. Plaintiff submitted a proposal in amount of $1,640.73 for rerouting the pipe and reframing the structural steel. Since the pipe was concealed there was no practical way for plaintiff to have discovered it in advance and the drawings did not show its presence. We think, therefore, that plaintiff is entitled to recover the reasonable cost of rerouting the pipe, which we find to be $1,040.73. Maurice H. Sobel v. United States, 88 C. Cls., 149, 165.
Section 151 of the specifications (having to do with plaintiff’s obligations under the contract to make changes in pipes, conduits, wiring, ducts and other existing work) is as follows:
The contractor shall ascertain whether or not any other work of this nature will be necessary and, if so, the nature and extent of it from the drawings and by examination of the premises, and shall carry out said work.
*647 Clearly since this particular pipe was not only not disclosed by the contract drawings, but was wholly concealed, its removal was not contemplated by either of the parties, and constitutes a new and extra undertaking not covered by the contract itself.
Article 15 authorizes the contracting officer, or his representative, to decide questions of fact arising under the contract. There was no dispute as to the essential facts. They were conceded by both parties. It thus becomes a question of law.
Plaintiff is not entitled to recover on the item set out in finding 27 for the reason that the defendant accepted plaintiff’s later proposal to offset such claim against a reduction to which defendant was entitled because of the omission of the contract requirement that plaintiff remove certain cement floor.
The petition alleges that the contractor was ordered in writing by the defendant to furnish and that it did furnish a temporary bridge not required by the contract which cost $36,000.00. It claims the difference between this cost and the estimated cost of the bridge it proposed to construct which is set forth in an uncertain amount between eight and ten thousand dollars, or a net claim of approximately $26',000. We do not believe plaintiff is entitled to recover on this item. Specifications 112, 113 and 114 require that plaintiff shall provide the necessary temporary driveways in order to maintain uninterrupted service of vehicles to the mailing platforms during the life of the contract. The bridge plaintiff proposed to construct by driving piles would have been inadequate and dangerous, and the driving of piles would have obstructed the driveway which had to be kept open. The defendant demanded and secured a safe bridge or driveway at no more cost to the plaintiff than was fair and reasonable.
While there is some measure of merit to plaintiff’s claim as outlined in finding 29, and as set out more fully in finding 7, it failed to pursue its remedy in the manner provided under the terms of the contract.
In each of the other items claimed by the plaintiff either the proof of the damages is not satisfactory, or plaintiff *648 failed to pursue the remedy or to follow the stipulated procedure specified in the contract.
Plaintiff is entitled to recover $19,596.38. It is so ordered.
WhitakeR, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Madden, Judge, took no part in the decision of this case.